In re Matter of William Creager, Also Known as Wilbur Creger, and Pete Smith, etc., et al., Appellees. Frank Foundries Corporation, Appellant.

Gen. No. 9,958.

Opinion filed September 19, 1944.

OAKLEAF & CHURCHILL, of Moline, for appellant; CYRUS CHURCHILL, of Moline, of counsel.

MEYERS & MEYERS, BEN MEYERS and HART E. BAKER, all of Chicago, for appellees.

Mr. Presiding Justice Dove delivered the opinion of the court.

This is an appeal from an order of the circuit court of Rock Island county dismissing for want of jurisdiction, an arbitration proceeding instituted by appellant against appellees, involving a labor dispute.

Appellant operates a gray iron foundry in the City of Moline, and the employees are represented by Local No. 909 of the International Union of United Automobile, Aircraft & Agricultural Implement Workers of America, for the purpose of collective bargaining. On May 15, 1942, appellant and the union entered into a labor relations contract for the period of one year, containing provisions for the adjustment of grievances by arbitration, if not settled on presentation thereof, or by a hearing by a designated representative. The agreement provided for the settlement of all disputes, grievances, or differences between the parties by grievance procedure and arbitration as set forth therein, provided, that proposals to alter or amend any provision of the agreement, or disputes or grievances affecting hours of labor or wage rates shall not be subject to arbitration, although they shall be subject to grievance procedure. That part of the agreement relating to arbitration provides that the decision of the arbitrator, whether he be chosen by the parties or by the National War Labor Board, shall be final and binding upon both parties.

The various steps and proceedings in the case, in chronological order, are as follows:

On July 3, 1942, two employees, William Creager and Pete Smith, classed by appellant as laborers, each filed with appellant a grievance, asking to be rerated as grinders. The latter occupation paid a higher wage than that of laborer. On October 22, 1942, an agreement was entered into between appellant and the union, submitting the grievances to arbitration under

the rules of the American Arbitration Association and "the Arbitration Law of the State of Illinois," and naming as arbitrator, Dr. Willett Henshaw, from the panels of the American Arbitration Association. The submission agreement concludes with a provision that the parties will faithfully observe the same and the rules above mentioned, and will abide by and perform any award rendered pursuant thereto, and that a judgment of the court, State or Federal, having jurisdiction, may be entered upon the award.

The arbitrator held a hearing on October 22, 1942, and under date of December 18, 1942, made his award that William Creager be classified as "inspector," and was entitled to pay as such, and that Pete Smith be classified as a "grinder" and was entitled to pay as such. A controversy arose between the parties as to the interpretation of the meaning of the award, and on July 22, 1943, they appeared before the Regional War Labor Board, which, on the same day, entered an order directing the arbitrator to clarify his award, and that his interpretation and clarification shall be final and binding upon both parties. On September 10, 1943, the arbitrator supplemented the award with a statement that William Creager, classed as a laborer by appellant, was classed by the arbitrator as an inspector, and was ordered to be paid accordingly at 70¢ per hour, retroactive to May 15, 1942; with a similar order as to Pete Smith as a grinder.

The proceedings in the instant case were filed by appellant in the circuit court on September 13, 1943. On October 13, 1943, the Regional War Labor Board entered an order directing appellant to forthwith comply with the terms of the arbitration award as interpreted and classified under date of September 10, 1943, until such time as a court of competent jurisdiction issues a ruling contrary to such award, and that such directive order is subject to discontinuance should a court of

competent jurisdiction render a decision contrary to the terms of the award. On October 20, 1943, appellant forwarded its petition to the National War Labor Board at Washington, D. C., to review the order of October 13, 1943, and asking that the order be modified by allowing appellant to deposit the sums of money awarded to the parties with some suitable agency or person to be held until a decision could be obtained in the instant pending proceeding. On October 24, 1943, the union notified appellant that since appellant had postponed court hearing on Monday (October 25) and was meeting with the War Labor Board and union representatives in Chicago on Monday, the union officers would be unable to delay strike action beyond Monday unless assured by Monday night that appellant had complied with the arbitration awards and directive orders, and had withdrawn from all court actions to avoid compliance, and had withdrawn the petition for review of the directive order of October 22, 1943. The director of disputes of the Regional War Labor Board also notified appellant that in case of a strike the government would probably take over the plant. The report of proceedings recites that yielding to the threat of the Regional War Labor Board to seize the plant, and under protest, appellant made payment to William Creager and Pete Smith of the amounts awarded them by the arbitrator. It appears that the payment was made on October 26, 1943, but appellant refused to dismiss the proceeding. Thereafter, on October 28, 1943, without notice to either party, the Regional War Labor Board entered an order setting aside its order of October 13, 1943, and providing that unless there was compliance with the order of July 22, 1943, prior to November 2, 1943, the case would be forwarded to the National War Labor Board in Washington, D. C., for compliance and enforcement.

The instant proceeding was begun in the circuit court by the filing of the original agreement, the sub-

mission agreement, and a motion asking the court to take jurisdiction of the parties and the subject matter of such submission, to the end that the arbitrator state his final award in the form of a conclusion of fact for the opinion of the court on the questions of law arising. Appellees orally objected to the jurisdiction of the court.

Appellant claims that section 6 of the Illinois Arbitration and Awards Act of 1917 (Ill. Rev. Stat. 1943, ch. 10, pars. 1–18 [Jones Ill. Stats. Ann. 109.001–109.018]), requires the courts to take jurisdiction of the parties and the subject matter and to pass upon questions of law arising from any award in a proceeding under the act, upon the filing in court of the arbitration submission, and the giving of notice; and that the National War Labor Board is concerned only with compliance with arbitration awards, and by rule expressly reserves and sanctions the rights of the parties to obtain a judicial declaration of the rights and obligations flowing from the award in a court of competent jurisdiction, citing section III of the rules of the Board adopted on January 22, 1942, known as Administrative Regulation No. a (7 F. R. 600).

Appellees contend that the National War Labor Board had exclusive jurisdiction of the controversy, by virtue of sec. 7, sub-par. 2, of the War Labor Disputes Act of June 25, 1943 (Public Laws 89, 78th Congress, 1st Session), delegating the power and duty to the National War Labor Board to decide disputes, and to provide by order the wages and hours and all other terms and conditions customarily included in collective bargaining agreements, such orders to be in effect until the further order of the Board; and by the executive order of the President on January 12, 1942, establishing the National War Labor Board, and providing that after taking jurisdiction, the Board shall finally determine the dispute. Appellees also contend that because of the payment made by appellant in compliance with the

award, the case became moot before the judgment of the trial court was entered.

The claim that the cause is moot requires first consideration. The law is well settled that the duty of a judicial tribunal is limited to determining rights of persons or of property actually controverted in the particular case before it, and the existence of such an actual controversy is an essential to appellate jurisdiction. (*National Jockey Club v. Illinois Racing Commission,* 364 Ill. 630, 631; *Chaitlen v. Kaspar American State Bank,* 372 Ill. 83, 87.) Where the substantial questions or the issues involved in the trial court no longer exist, an appellate court will not review the cause merely to decide moot questions to make a precedent, or to determine the liability for costs. (*Tuttle v. Gunderson,* 341 Ill. 36, 45; *Jones v. Clark,* 355 Ill. 527, 530.) A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights, or which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any cause, cannot have any practical legal effect upon a then existing controversy. (*Adams v. Union R. Co.,* 21 R. I. 134, 42 Atl. 515, 44 L.R.A. 273; *Ex parte Steele,* 162 Fed. 694, 702.) The obvious corollary to these principles is that if a substantial issue or question remains in the case, the cause is not moot.

This is not exclusively a wage dispute. Ever since the initial step of the filing of the grievances by the two employees mentioned, the cause has embraced, not only their wages up to the time the payment was made, but also their status as laborers, or an inspector and grinder, respectively, and their right to receive pay incidental thereto for the entire period from May 12, 1942, throughout their future employment with appellant in those capacities.

The War Labor Disputes Act of June 25, 1943 was passed after the expiration of the one-year period mentioned in the contract of May 15, 1942 between the parties as the period of its duration. The basic principle of the theory that a cause becomes moot by a payment of the demand is the presumption that the party making such payment thereby impliedly abandons his defense. We do not know of any hard and fast rule that such presumption cannot be overcome by circumstances showing that a payment was made only to preserve the status quo, or to avoid disastrous results of a failure to make it, with no intention to abandon the proceeding or any rights thereunder, and we think that such a showing is sufficient to overcome such presumption, and it is not necessary that such circumstances amount to duress. Thus in *Meinel v. Randolph,* 181 Ill. App. 400, it was held that where the grantee of the plaintiff in error redeemed property involved in a mortgage foreclosure to avoid the result of the expiration of the period for redemption, such payment was not a release of errors by the plaintiff in error so as to require a dismissal of the writ. In this case, the payment of the amount fixed by the award, up to the time of such payment, was made under protest, in order to avoid a strike and the probable taking over of the plant by the government, and manifestly cannot be considered as an acquiescence by appellant in the award, nor as final or binding upon it as to the status or wage of the employees, either before or after such payment. How appellant could otherwise have preserved the status quo is not suggested or apparent. The fact that appellant intended to preserve its rights under the issues, is demonstrated by the payment under protest, and the refusal to dismiss the proceeding pending in the circuit court. Thus, the issues are the same as when the instant proceeding was filed in the circuit court, and all the substantial questions still remain unsettled. The statement in appellant's brief that as a

practical matter it may be difficult to obtain a refund of the money paid if the award is set aside by the court is beside the point and does not change the legal status of the cause, or of the issues. In our opinion the cause is not moot.

This leaves for consideration the question of the circuit court's jurisdiction. The 1917 Arbitration and Awards Act of this State, as amended in 1919 (Ill. Rev. Stat. 1943, ch. 10, pars. 1–18 [Jones Ill. Stats. Ann. 109.001–109.018]), relied upon by appellant, does not purport to embrace labor relations. Provisions for such proceedings are embraced in the peacetime act of August 2, 1895, as amended by the act of June 7, 1943, concerning controversies between employer and employees (Ill. Rev. Stat. 1943, ch. 10, pars. 20–30 [Jones Ill. Stats. Ann. 109.020–109.031]), which provides for settlement of any controversy or difference between employer and employee not involving questions which may be the subject of an action at law or bill in equity, through the mediation and decision of the Department of Labor, and the only court proceedings provided for therein are for the attachment of a witness refusing to obey a subpoena or other process of the Department of Labor, and contempt proceedings for a refusal to obey the process and order of the court thereunder; and contempt proceedings in case of a failure to abide by the decisions of the Department of Labor in cases where both the employer and employee shall have joined in the application to the department.

Section 1 of the Act of 1917, as amended, provides: "That all persons having requisite legal capacity may, by an instrument in writing to be signed by them, submit to one or more arbitrators to be named in the manner indicated by such writing, any controversy existing between them, and may, in such submission, agree that any court of competent jurisdiction, or any court therein named (provided it is of competent jurisdiction) may pass upon any questions of law arising in

such arbitration proceedings, and that a judgment, or successive judgments, of such court shall be rendered upon the award made pursuant to such submission, and for the payment of fees and costs of the arbitrator or arbitrators.'' Thus, the statute does not purport to invest any court with jurisdiction of such proceedings, but expressly limits them to courts of competent jurisdiction. Section 6 of the same act, invoked by appellant, provides for the taking of jurisdiction by the court upon the filing of the submission and the giving of notice, without the filing of any pleadings whatsoever.

That part of the rules of the National War Labor Board relied upon by appellant, provides: ''The Board's determination of the matter will constitute a final adjudication unless and until a tribunal of competent jurisdiction issues rulings contrary to those of the Board. The action of the Board in no way prejudices the right of a party to appeal to a court of competent jurisdiction for a judicial declaration of the rights and obligations flowing from the award. The Board's order will be made expressly subject to discontinuance should a court render a decision contrary to the conclusions of the Board.'' Manifestly, the rule could not invest any court with jurisdiction, nor does it purport to do so. It is also to be noticed that the submission agreement provides for judgment on the award only by a court having jurisdiction. Jurisdiction can be conferred only from an authoritative source, such as the organic law or a legislative act.

The Arbitration and Awards Act of 1917, as amended, is a general statute relating to arbitration and awards, without any mention of labor disputes. The Act of 1895, as amended in 1943, pertains particularly and exclusively to labor disputes. The well-settled rule of statutory construction is that where there is found in a statute a particular enactment, it is held to be operative as against the general provisions

on the subject either in the same act or in the general laws relating thereto. (*Frank v. Salomon*, 376 Ill. 439, 446; *Robbins v. Lincoln Park Com'rs*, 332 Ill. 571; *Handtoffski v. Chicago Consol. Traction Co.*, 274 Ill. 282.) Under this principle, we do not think that the instant controversy would be cognizable by the circuit court. By this we are not to be understood as holding that the Act of 1895, as amended in 1943, governs war labor disputes embraced within the Federal War Labor Disputes Act.

Section 7 (a) of the War Labor Disputes Act of June 25, 1943, *supra*, invests the National War Labor Board with jurisdiction of labor disputes which may lead to substantial interference with the war effort. The National War Labor Board was established by Executive Order of the President, No. 9017, on January 12, 1942, which provides, in part: "After taking jurisdiction, the Board shall finally determine the dispute."

By vesting the Board with jurisdiction of labor disputes which may lead to substantial interference with the war effort, the War Labor Disputes Act is analogous to the peacetime Federal Employers' Liability Act, which, it is held, exclusively occupies the field in cases involving injuries to employees engaged in interstate commerce, or in duties connected with or in furtherance thereof, and supersedes the Workmen's Compensation Act of this State. (*Brink v. Industrial Commission*, 368 Ill. 607.) Other peacetime holdings that a State court has no jurisdiction to review an order of an agency of the United States are found in (*Keller v. American Cyanamid Co.*, 132 N. J. Eq. 210, citing *Manning v. Feidelson*, 175 Tenn. 576, 136 S. W. (2d) 510; *Venner v. Michigan Cent. R. Co.*, 271 U. S. 127, 70 L. Ed. 868, 46 Sup. Ct. 444.)

In *International Association of Machinists v. State ex rel. Watson* (Fla.), 15 So. (2d) 485, the court said in the opinion:

"The constitution of the United States vests in the President and in the Congress full power to declare and wage war. This vestiture of power carries with it all those implied powers necessary to fully effectuate this express enumerated power. *McCulloch v. Maryland,* 4 Wheat, 316, 4 L. Ed. 579. The Federal power to wage war being absolute, it must necessarily be exclusive. *Ex Parte Milligan,* 4 Well 2, 18 L. Ed. 281. This express grant of power, says the Supreme Court of the United States in *Kiyoshi Hirabayshi v. United States of America,* 320 U. S. 81, 63 S. Ct. 1375, 1382, 87 L. Ed. 1774, dated June 21, 1943; 'extends to every matter and activity so related to war as substantially to affect its conduct and progress. The power is not restricted to the winning of victories in the field and repulse of enemy forces. It embraces every phase of the national defense, including the protection of war materials and the members of the armed forces from injury and from dangers which attend the rise, prosecution and progress of war.' (Citing cases.)

"The National War Labor Board was created by Executive Order January 12, 1942, for the purpose of procuring an uninterrupted prosecution of the war on the part of labor and industry. This Board was given the duty of disposing of all labor disputes which might affect the war effort. In consideration of labor agreeing to a policy of no strikes for the duration of the war, labor was given the right of collective bargaining, and the National War Labor Board was set up to settle all disputes peacefully. If the Executive Department of each of the several States, through its Attorney General, is allowed to question in the courts of the several states whether as a matter of public policy the war effort is being properly prosecuted, then a clash is inevitable among state tribunals and between them and Federal agencies expressly created for that purpose."

In *Pearson Candy Co., Ltd. v. Waits,* individually and as representative of Bakery and Confectionery

Workers International Union of America, Local No. 417, etc., California superior court, county of Los Angeles, 13 Labor Relations Reporter 558, January 3, 1944, the Regional War Labor Board issued a directive order requiring the employer to comply with its contract with the union "until the contract shall have been held invalid by the final decision of a competent tribunal." The employer filed a petition for review of this order which was denied, and the Board took steps to require the employer to show cause why it should not comply with the order. After the petition for review was filed, the employer brought an action in the superior court seeking an adjudication that the contract was void. The union filed a cross complaint, and pleaded the pendency of another action for the same cause between the same parties before the National War Labor Board. The court in that case dismissed both the complaint and the cross complaint, on the ground that the court did not have jurisdiction. In the course of the memorandum opinion the court said:

"There can be no doubt that in passing the War Labor Disputes Act Congress intended to give to the War Labor Board full power to decide any dispute between employer and employee in any labor dispute which in the opinion of the Board has become so serious that it may lead to substantial interference with the war effort. And furthermore this power stems directly from the War powers of the United States Government as exercised by the President. The Board functions as a war agency; . . . . From the foregoing it must necessarily be concluded that the National War Labor Board, having assumed jurisdiction and made its directive order in respect to the contract herein in question, has exclusive jurisdiction to pursue and prosecute such matter to a final termination, subject to federal laws and the orders of the President and without interference by any state tribunal, . . . From all of which it appears that, for the duration at least, state

courts are deprived of power to adjudicate the validity of labor contracts affecting interstate commerce, and giving rise to a labor dispute which the War Labor Board deems so serious as to lead to substantial interference with the war effort, and over which it assumes jurisdiction.''

These two holdings last mentioned are based on possible interference with the war effort. Considering appellant's statement that it employs, under average conditions, about 200 men, subject to collective bargaining, and the well known necessary requirement for and the practically universal employment of all iron and steel industries in the war effort, the fact that a labor dispute and a strike in appellant's plant would substantially interfere with the war effort, needs no further exposition. We think there can be no doubt that as to such disputes the Federal War Labor Disputes Act supersedes all statutory enactments of this State on the subject, general and special. The peacetime question of whether interstate commerce is involved is not in the picture.

Furthermore, it is to be noticed that the petition for review filed with the National War Labor Board is directed at only the order of October 13, 1943, and no petition was filed for review of the basic order of July 22, 1943, which provides that the arbitrator's ''Interpretation and clarification shall be final and binding upon both parties.'' By filing a petition for review under the rules of the Board, appellant acknowledged the Board's rule-making power. It is a familiar principle that orderly procedure authoritatively prescribed must be exhausted before any court will take jurisdiction to entertain proceedings to question the action of such agency.

Our conclusion is that the circuit court correctly held that it had no jurisdiction of the cause. Whether any' court other than the courts of this State, and what court, if any, has jurisdiction of such controversies, is

not before us, and we refrain from any discussion of or holding on that question. The order dismissing the cause for want of jurisdiction is affirmed.

*Order affirmed.*