## PARIS et al. v. METROPOLITAN LIFE INS. CO. et al.

District Court, S. D. New York.
June 12, 1946.

Boudin, Cohn and Glickstein, of New York City (Louis B. Boudin, Sidney Elliott Cohn, Leonard B. Boudin, and Daniel W. Meyer, all of New York City, of counsel), for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, of New York City (Burton A. Zorn, Eugene Eisenmann, and Harold H. Levin, all of New York City, of counsel), for defendant Metropolitan Life Ins. Co.

MANDELBAUM, District Judge.

This is a suit for a declaratory judgment in which plaintiffs seek a decree declaring that they are entitled to a fund now on deposit with the Manufacturers Trust Company, in the name and subject to the order of the individual defendants as escrowees.

The defendant, Metropolitan Life Insurance Company, hereinafter called Metropolitan, in turn counterclaims for a declaratory judgment which will declare that certain sections of the Insurance Law of the State of New York, Consol.Laws, c. 28, prohibit payments of this fund to the plaintiffs.

The material facts which will be deemed the court's findings of fact, follow:

1. Plaintiffs are industrial insurance agents, hereinafter called agents, employed by the defendant, Metropolitan. They are citizens and residents of various states other than New York, and are suing on their own behalf and as assignees of certain of the other agents in the six states involved in the disputes.

2. Metropolitan is a New York corporation engaged in the business of life insurance and certain other forms of insurance.

3. United Office and Professional Workers of America, CIO (UOPWA) and Industrial Life Insurance Agents Local 30 (Local 30), both hereinafter referred to as unions, were the sole collective bargaining representatives of industrial insurance agents employed by Metropolitan. The former representing agents outside of New York and the latter for agents in New York.

4. Plaintiffs, as well as all other insurance agents, appointed by Metropolitan throughout the country, signed similar written agency agreements which defined their duties and which specify the rates of commissions to be paid.

5. Disputes arose between the unions representing the insurance agents (UOPWA and Local 30) and Metropolitan regarding compensation to be paid by Metropolitan to its industrial insurance agents in various states.

6. The dispute involving the New York agents was certified to the National War Labor Board on or about October 24, 1942. Hearings were had before the Regional War Labor Board for the Second Region, whose order (amended complaint Exhibit A–1) was appealed from by Metropolitan to the National War Labor Board.

7. In May, 1943, Metropolitan and Local 30 entered into a collective bargaining agreement fixing all terms of employment in dispute except that of wages, and as to that, the agreement provided that "Provisions with respect to compensation may be submitted to the War Labor Board."

8. That thereafter, six other collective bargaining agreements were entered into

between Metropolitan and UOPWA covering agents in six different states similar to the one entered into between Metropolitan and Local 30 referred to in the preceding paragraph.

9. That thereafter, these disputes were certified by the Secretary of Labor of the United States to the National War Labor Board and finally by agreement, all disputes were consolidated with the New York case, and to be disposed of as one case. The agreement further provided that the evidence and exhibits in the New York case were deemed to be the evidence and exhibits in the consolidated case.

10. That the National War Labor Board, by a directive order dated September 18, 1944, affirmed the order of the Regional War Labor Board in the New York case by a 7 to 5 vote, without opinion, and directed an average weekly increase for agents of Metropolitan involved in the dispute of $2.85 *retroactive in each case to the dates of certification of the case to the War Labor Board.*

11. Metropolitan contended before the War Labor Board both prior and subsequent to the issuance of the directive order of September 18, 1944, that it could not comply with any retroactive provisions of the order because it was prohibited from doing so by Sections 213(7) and 213-a(5) of the Insurance Law of the State of New York.

12. In consideration of the unions (UO PWA and Local 30) forebearing to apply to any governmental authority for the enforcement of the War Labor Board orders in question, Metropolitan agreed to deposit in escrow a fund to cover the retroactive wage increases in accordance with the order, subject to determination by a court of competent jurisdiction of Metropolitan's claim that it is prevented from paying retroactive wage increases by virtue of Secs. 213(7) and 213-a(5) of the Insurance Law of the State of New York.

13. That an escrow agreement between the unions, Metropolitan and the escrowees (Exhibit D amended complaint) was entered into and Metropolitan deposited $792,-318.19 to the credit of the escrowees to pay out in accordance with the agreement and the directive of the court.

From the foregoing, it would appear that the respective positions of the parties are the following:

Metropolitan contends that Sections 213 (7) and 213-a(5) of the Insurance Law of the State of New York prohibit the retroactive payments as directed in the War Labor Board order and that the War Labor Disputes Act, 50 U.S.C.A.Appendix, § 1501 et seq., and the order of the War Labor Board do not supersede these sections of the Insurance Law. Plaintiffs take the opposite view. They say that assuming, arguendo, that the aforementioned provisions of the Insurance Law of the State of New York bar such payments, nevertheless, plaintiffs must prevail because such sections have been superseded and rendered inoperative by the War Disputes Act and the order of the War Labor Board. They further contend that irrespective of the latter, the sections of the Insurance Law do not bar the retroactive payments.

Thus, two clear cut issues emerge. First, do Sections 213(7) and 213-a(5) of the Insurance Law of the State of New York prohibit the retroactive payments directed by the War Labor Board? Second, assuming that these sections prohibit the retroactive payments, have they been superseded and rendered inoperative by the War Labor Board order?

The court will consider these questions in the order named.

Sections 213(7) and 213-a(5) of the Insurance Law of the State of New York provide that the amount of the agents' commissions be fixed by agreement in advance of the rendition of the service or the collection of the premium and that no greater compensation shall be paid than that previously fixed. The former relates to ordinary life insurance and the latter to industrial life insurance.

Unfortunately, the court is without guidance with respect to any judicial construction or interpretation of these provisions, there having been none since the time of the original enactment 40 years ago and the reenactment in substantially the same

form in 1939. It therefore becomes incumbent upon the court to seek assistance from the legislative history prior to enactment for some light on the legislative intent. Both sides have devoted much space in their comprehensive and well written briefs with respect to the Legislative Committee, known as "Armstrong Committee" which investigated insurance companies in 1906. The investigation disclosed, among other things, improper and discriminatory payments to agents who were related to officers and directors of the insurance companies, as well as the payment of unreasonable bonuses to certain agents dependent upon the volume of business obtained by them. This eventually lead to the passage of various statutes including those in issue.

Although Sections 213(7) and 213-a(5) by their terms appear to prohibit retroactive payments to agents, I find that the situation presented is not one which the legislature sought to guard against in passing the original and present statutes.

■ After giving much thought to the subject, I am persuaded that it was to prohibit and prevent the payment by insurance companies of excessive commissions that impelled the legislature to require that no greater commissions be paid than had been determined by agreement in advance. When looked upon in this light, it becomes obvious that the lawmaking body sought to prevent any device or arrangement whereby agents would receive retroactive payments which were excessive, unreasonable and discriminatory.

Here, the background leading from the certification of the disputes to the final promulgation of the directive order of the War Labor Board shows beyond doubt that the parties were engaged in a legitimately contested labor dispute which finally culminated in the agreement in which Metropolitan contracted to pay an increase to agents prospectively, and also retroactively if the above quoted sections of the Insurance Law of the State of New York did not prohibit it. There is nothing in the case to suggest that the collective bargaining agreements were a device, scheme or arrangement to circumvent any law.

Metropolitan urges that many prior rulings by the State Superintendent of Insurance point the way to a holding by the court that the retroactive payments at bar are forbidden. Further, that these rulings must be given great weight in determining what these sections mean.

I find no fault with this last assertion except that the court is mindful of the fact that the rulings of the Superintendent cited indicate situations not parallel nor even similar to what we have before us. In those cases, no dispute or submission to impartial arbitration is shown, but merely indicate that the rulings were made pursuant to the inquiries on the part of the insurance companies to the Superintendent as to whether or not they could voluntarily make retroactive payments to their employees. Both a reading of the sections and the opinions of the Superintendent of Insurance shows that they were meant to apply only to increases in compensation given by the *voluntary* act of the company and not where retroactive increases as here were ordered by a government agency as a result of a bona fide labor dispute.

As a point of interest, the Supreme Court has very recently held in construing a provision of the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 901 et seq., that the history and language of the Act prevented the court from giving an administrative ruling persuasive weight. Fishgold v. Sullivan Drydock Repair Corp., 66 S.Ct. 1105.

And finally, on this phase of the case, I find nothing in my construction of these sections in question which conflicts with the public policy of this State. As a matter of fact, it is its declared public policy to encourage the practice and procedure of collective bargaining and mediation in labor relations. Labor Law, Consol.Laws, c. 31, §§ 700–716, 750–758. It is also generally accepted that the collective bargaining process requires that agreements reached at the end of bargaining be made retroactive to the time when the dispute arose.

To accept the construction urged upon the court by Metropolitan would virtually isolate insurance agents as a class from any other labor class, in that it would be impracticable if not impossible for them to engage in collective bargaining or mediation in disputes involving their compensation.

The court is unwilling to subscribe to reasoning which would lead to such results, in the absence of controlling authorities or a clearly expressed legislative mandate.

Limiting my ruling to the facts at bar and in no wise attempting to nullify the efficacy or applicability of Sections 213(7) and 213a(5) in a proper case, I conclude that these sections do not forbid the retroactive payments ordered by the War Labor Board order of September 18th, 1944.

While ordinarily this ruling obviates consideration of the second issue, the court is impelled to pass upon it because of an important federal question involved.

The President of the United States, by executive order created a National War Labor Board, Executive Order No. 9017, 50 U.S.C.A.Appendix, § 1507 note. It was given jurisdiction over all controversies that might affect war production. It provided, among other things, that the Board was to settle finally all cases that came before it but it said nothing concerning how the Board was to enforce its decisions.

By the Act of June 25, 1943, War Labor Disputes Act, 50 U.S.C.A.Appendix, § 1501 et seq., Congress gave statutory approval to the Board. This law, in substance, provided for the continuance of the Board as created by executive order and it was also given authority to settle finally any dispute likely to cause interference with the war effort. In such cases it was empowered to prescribe all conditions of employment, including wages and hours and the power to subpoena witnesses. While the Board received no direct power to enforce its decisions, nevertheless, the President was given the authority to seize any war plant where production was interrupted by a labor dispute.

In other words, the National War Labor Board could assume jurisdiction that was compulsory over any dispute that might affect the war effort, even though neither party desired it.

It is urged upon the court by the defendants that a number of decisions have construed the effect of a War Labor Board order, and that such construction leaves no room for doubt that such order is merely a recommendation and without the force of law.

The cases referred to are Employers Group of Motor Freight Carriers, Inc., v. N. W. L. B., 79 U.S.App.D.C. 105, 143 F.2d 145, certiorari denied 323 U.S. 735, 65 S.Ct. 72, 89 L.Ed. 589; N. W. L. B. v. Montgomery Ward & Co., 79 U.S.App.D.C. 200, 144 F.2d 528, certiorari denied 323 U.S. 774, 65 S.Ct. 134, 89 L.Ed. 619; N. W. L. B. v. United States Gypsum Co., 79 U.S. App.D.C. 239, 145 F.2d 97, certiorari denied 324 U.S. 856, 65 S.Ct. 857, 89 L.Ed. 1415; In re Surburban Bus Co., D.C.S.D. N.Y., 65 F.Supp. 389, reversed on other grounds, 2 Cir., 156 F.2d 127.

In those cases (except the Surburban Bus case which dealt with a bankruptcy question) the employer sought to enjoin an order of the War Labor Board. In each case the injunction was denied on the ground that since the Board orders were not self executing, the employer was not threatened with such immediate and irreparable injury that would impel a court of equity to intervene.

I do not think that these decisions hold that orders of the Board may be disregarded or that they are legal nullities. As I see it, the cases concern themselves mainly with the nonreviewability by the court of these orders. It is my opinion that those cases are authority for the proposition that such orders are not expressly enforceable by the War Labor Board in the courts in the first instance. I might point out in this connection that the Supreme Court has expressed the view that judicial enforcement is not a prerequisite to the existence of a legal right or obligation. Switchman's Union of North America v. National Mediation Board, 320 U.S.

297, 64 S.Ct. 95, 88 L.Ed. 61. However, it cannot be denied that such orders are legally enforceable by governmental agencies other than courts. Their enforcement rests upon executive sanction. Thus, as I have already pointed out, sanctions were provided for the enforcement of Board orders through the President's power to take over plants and the power of the Economic Stabilization Director to order the withholding of certain benefits and privileges. See United States v. Montgomery Ward & Co., 7 Cir., 150 F.2d 369, certiorari denied, 324 U.S. 858, 65 S.Ct. 862, 89 L.Ed. 1416. See 66 S.Ct. 140, 90 L.Ed.——.

■ It has now been definitely settled that insurance is commerce and that insurance conducted across state lines is therefore interstate commerce. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; Polish National Alliance of United States v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509. That Metropolitan is engaged in interstate commerce is no longer open to question. It is fundamental that the power of Congress to regulate interstate and foreign commerce is exclusive.

■ The South-Eastern Underwriters decision in no sense curtails the power of the states to regulate the business of insurance especially with respect to state regulatory and tax laws. And if there was any doubt or uncertainty as to the meaning and effect of this decision, the same was clarified by Congress when it enacted Public Law 15, 15 U.S.C.A. § 1011 et seq., so as to remove, with certain exceptions, any existing doubts as to the right of the states to regulate and tax the business of insurance. Both from the report of the House Committee on the Judiciary, made in connection with Public Law 15 and from the Senate debates on the bill, I am convinced that it was not the intention of Congress in enacting Public Law 15 to give to the states any greater power to regulate insurance than they had prior to the decision of the South-Eastern Underwriters case. And the defendants' argument that Public Law 15 contravenes an order of the War Labor Board made under the Federal war power must accordingly fail.

■ It is well-settled that "in fields where federal law is supreme under the Constitution, the transactions of the Federal Government have been generally adjudicated to be free and unhampered." In re Briley's Estate, 155 Fla. 798, 21 So.2d 595, 597.

■ We are here confronted with labor relations in interstate commerce, a field which Congress has occupied and in which it is supreme, National Labor Relations Act, 29 U.S.C.A. § 151 et seq., Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. It covers the entire field of terms of employment and the manner in which terms of employment are to be arrived at. So that any legislation in this field must supersede any inconsistent state statute or regulation. Mr. Justice Black, writing for the Supreme Court in Case v. Bowles et al., 66 S.Ct. 438, 443, said:

"Where as here, Congress has enacted legislation authorized by its granted powers, and where at the same time, a state has a conflicting law which but for the Congressional Act would be valid, the Constitution marks the course for courts to follow. Article VI provides that 'This Constitution and the Laws of the United States * * * made in Pursuance thereof * * * shall be the supreme Law of the Land * * *.'"

Several cases have been called to the court's attention decided in three different states in which it was held that orders of the War Labor Board superseded inconsistent state laws. International Brotherhood of Papermakers, Local No. 66 (A. F. L.) v. Wisconsin Employment Relations Board, 245 Wis. 541, 15 N.W.2d 806; International Ass'n of Machinists v. State ex rel. Watson, 153 Fla. 672, 15 So. 2d 485; Matter of Creager, 323 Ill.App. 594, 56 N.E.2d 649.

■ While these cases are not controlling they nevertheless serve to illustrate that the power to declare and wage war rests exclusively with the President and Congress, Const. art. 1, § 8, cl. 11, and any

70

legislation enacted to carry out this express power (War Labor Disputes Act) must supplant and operate to suspend state action in regard to the same subject matter.

■ I conclude therefore that the War Labor Board order supersedes and renders inoperative Secs. 213(7) and 213-a(5) of the Insurance Law of the State of New York even if they prohibit the retroactive payments directed by the War Labor Board order.

Judgment is rendered in favor of the plaintiffs against the defendants as demanded in the amended complaint.

The following are the court's findings of fact and conclusions of law:

#### Findings of Fact.

1. The material facts (paragraphs 1-13 inclusive) are found.

2. The matter in controversy herein exceeds, exclusive of interest and costs, the sum or value of Three Thousand ($3,000) Dollars.

3. The matter in controversy with respect to the claim of each plaintiff here, exceeds, exclusive of interest and costs, the sum or value of Three Thousand ($3,000) Dollars.

#### Conclusions of Law.

1. This court has jurisdiction of the subject matter of this action.

2. The provisions of Sections 213(7) and 213-a(5) of the Insurance Law of the State of New York are inapplicable to the employees of the defendant, Metropolitan Life Insurance Company, involved in the disputes herein, and to the compensation directed by the order of the National War Labor Board to be paid to them, or any part thereof.

3. Sections 213(7) and 213-a(5) of the Insurance Law of the State of New York are inoperative as a bar to the payment by defendant, Metropolitan Life Insurance Company, to its employees involved in said disputes, or any of them, of the moneys directed to be paid to them by said order of the National War Labor Board, or any part thereof.

4. The plaintiffs and the other employees of defendant, Metropolitan Life Insurance Company, involved in the disputes herein are entitled to the fund now on deposit with the Manufacturer's Trust Co. in the name and subject to the order of the defendants, Leon W. Berney, Cecil J. North and E. J. Nicholas, as escrowees.

5. The plaintiffs are entitled to judgment in the amounts demanded in the amended complaint to be paid out of the fund on deposit with Manufacturer's Trust Co. to the credit of the defendants, Leon W. Berney, Cecil J. North and E. J. Nicholas, as escrowees, in accordance with the escrow agreement.