## Guter et al. v. Donaldson Iron Co.

*Robert A. Wilson, Joseph S. Levine,* and *Morris Efron,* for plaintiffs.

*Butz, Steckel, Hudders & Rupp,* for defendant.

HENNINGER, P. J., July 19, 1948.—In this novel case, Guter and Rohrbach, former employes of Donaldson Iron Company, sued that company on behalf of themselves and for 189 other former employes, all of whom were members of the Iron Molders Union.

The union was collective bargaining agent for all Donaldson employes and had an agreement providing for certain hourly wage rates for the several classifications of employment. The agreement expired on December 31, 1941, and was extended to April 1, 1942. After April 1, 1942, the employes worked without contract, pending negotiations between the union and the company and the employes continued to receive each pay day the amount of wages which had been paid under the former agreement.

The employes continued to work because of the union's pledge not to strike during the war. On July 31, 1942, the parties submitted their differences to the War Labor Board and on August 10, 1942, a stipulation was signed by both parties that the matter of the amount of wages and vacation pay should be submitted to the War Labor Board. A mediator of that board,

on January 28, 1943, found that from April 1, 1942, plaintiffs were entitled to certain rates that were higher than those paid up to April 1, 1942, and thereafter. Pending settlement of the dispute on the basis of the recommendation, the War Labor Board entered a directive order affirming the rates found by the mediator, but making it retroactive only to July 31, 1942, the date of referral to it of the dispute. The present suit is for the difference between the amount directed to be paid and the amount actually paid between July 31, 1942, and May 29, 1943. For present purposes, we accept the allegation in plaintiffs' complaint that the total of these increases amounts to $45,501.31.

Defendant protested this order and was given a hearing before a panel of the War Labor Board, which sustained the former directive order and whose decision was affirmed by the War Labor Board on April 5, 1944. Meanwhile defendant ceased operations on May 29, 1943, and the relation of employer and employe ceased between defendant and plaintiffs.

The foregoing averments cover 22 paragraphs and four exhibits in plaintiffs' complaint. The last two paragraphs are formal statements of demand and refusal and a restatement of the amount claimed.

Paragraphs 23, 24 and 25 complain that between April 1, 1942, and May 29, 1943, plaintiffs were denied fair and equitable rates of pay for services rendered and that the rates fixed by the War Labor Board are the reasonable, fair, customary and equitable wages to which plaintiffs are entitled. In their brief, plaintiffs ask for that difference on the basis of a "quantum meruit" claim.

Defendant filed preliminary objections to the complaint under two counts, the first in the nature of a plea in abatement and the second by way of demurrer.

It should first be noted that the suit as originally instituted was by present plaintiffs as officers of the

union, an unincorporated association, against defendant and three of its officers. In the light of the objections filed by individual defendants, they were dropped as defendants by stipulation of the parties and in the light of certain objections by the remaining defendant, plaintiffs acted for themselves and other individual employes instead of for the union. We need not, therefore, consider any of the objections filed by the individuals and objections nos. 1 to 8 and no. 14 on count I and objections no. 16 on count II, filed by defendant company, need not be considered.

Objections 9 to 13 inclusive and no. 15 deny jurisdiction in a court of law to hear a "class action" where each individual is severally entitled to recovery and where the amount to be recovered and the basis for determining that amount varies with each claim.

On count II, defendant objects that there is no cause of action in any of the represented or representative plaintiffs because (objections nos. 17, 18 and 19) this court has no jurisdiction to enforce a directive of the War Labor Board, which is not binding upon it and (objections nos. 20, 21 and 22) the employes, after April 1, 1942, worked under an express contract, were paid thereunder and therefore have no claim for compensation under any theory of quantum meruit.

We consider first the right of the avowed plaintiffs to act as representatives of all Donaldson employes. Clearly under Pennsylvania Rules of Civil Procedure, all employes could have joined in one action for wages. Pa. R. C. P. 2229(a) provides:

"Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action."

While it may be urged that upon expiration of the bargaining agreement with the union, each employe made a separate agreement of employment and while it is barely possible that the terms thereof might have been different, so far as concerns the points involved in this case, we can assume with fair certainty that, excepting for the wage rate, the terms of employment for all 191 employes are similar if not identical. There is surely only a common question of law and fact in the 191 claims and joinder is, therefore, proper.

If joinder of parties is proper, then all of the employes would have the right to intervene in the action brought by participating plaintiffs. Pa. R. C. P. 2737(3) provides:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if . . . (3) such person could have joined as an original party in the action or could have been joined therein;"

The difficult problem is whether the present action, without more, properly brings before the court the claims of the other 189 employes. Authority for the proposition that we can so adjudicate such claims is sought in Pa. R. C. P. 2230(a) which reads as follows:

"If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto."

Defendant contends that this is not a true class action and cites therefor Goodrich-Amram on Standard Pa. Practice, Procedural Rules Service, commentary 2230(a)—6 and 7, to the effect that a court cannot adjudicate the separate claims of all parties in an action at law in which they have not joined.

Since the Pennsylvania Procedural Rules are intended to liberalize practice (see Pa. R. C. P. 126) we accept with caution any authorities antedating either our Procedural Rules or the Permissive Joinder of Plaintiffs Act of June 25, 1937, P. L. 2072, 12 PS §159.1, which first permitted the joinder of plaintiffs with several or separate claims. In the latest of such cases (Gliwa v. U. S. Steel Corp., 338 Pa. 149) a judgment of non pros was entered when the attorney for allegedly represented plaintiffs failed to obtain warrants of attorney from them.

We then look for guidance to the Federal courts upon whose Procedural Rule 23(a), Pa. R. C. P. 2230(a) was based. The case of strongest authority and clearest reasoning is Pentland v. Dravo Corporation, 152 F. (2d) 851, in which Judge Goodrich analyzes the situation and holds that a case like the present one represents not a true, nor what he calls a hybrid class action, but that it is a spurious class action, which by its very nature does not lend itself to true representative pleading. True, he is interpreting section 16(b) of the Fair Labor Standards Act, but all that is stated applies with equal force to Federal Rule 23(a) and to Pa. R. C. P. 2230(a).

In a real (true or hybrid) class action, representation is practicable because the representative plaintiffs have only an indirect interest in the litigation and do not themselves receive the proceeds of the litigation, which flows into the hands of an unincorporated association, a trustee, a corporation, and so forth. In our case, whether or not several members of the group (or class) may institute the action for all, they clearly have no authority to obtain, collect or satisfy a judgment except to the extent of their personal interest therein.

We cannot believe that Pa. R. C. P. 2230(a) intended to constitute the members who first sued as trustees

for all other members. It is clear that the other members are not bound by the present pleadings and that while they may join in the present suit, they are not bound to do so and could, if they would, start independent actions.

The lack of authority in plaintiffs to have the claims considered as a unit recoverable by named plaintiffs in their entirety is indicated by the dismissal of a similar suit between the same parties in the Federal court because less than $3,000 was involved in the claim of any one employe. That court must have considered the claims of each employe as several and not recoverable in a class action: Guter v. Donaldson Iron Co., District Court for the Eastern District of Pennsylvania, civil action no. 5563.

At the least, defendant is entitled to know for whom plaintiffs are suing and the amount owing each and how that amount is arrived at. That much would be necessary as to the claims of Guter and Rohrbach, even if no one else saw fit to intervene in the action and to that extent their complaint is faulty. On the other hand, declaring this not a true class action does not dispose of the entire action since joinder of Guter and Rohrbach is permissible under Pa. R. C. P. 2229(a).

On the basis of the Pentland case and the many other cases therein cited, something more is needed if all the employes are to participate in the suit.

Since these are wage claimants, favored by the law, their privilege of joining in the suit should be exercised with a minimum of inconvenience or expense, especially since the statute of limitations is about to run against the earlier wages claimed and might run against all before a final adjudication could be reached.

We would entertain, therefore, a joint petition or petitions to intervene adopting a pleading that may be filed setting out in one count the grounds for the

claims of all with one schedule in a single paragraph or exhibit of the amount due each. We would waive such technicalities as we may, consonant with sound procedure and equitable practice.

In view of our disposition of the demurrer, what is said of joinder seems illusory—an invitation to wager on a dead horse. In the event of a successful appeal, however, the other claimants might have forfeited a valuable right if they neither join nor—what may be simpler—institute a new joint action, which could be held in abeyance pending such appeal.

Since present plaintiffs and any other employes who may care to intervene have the right to press their claims in this action, we must consider the preliminary objections by way of demurrer.

Clearly, the directive of the War Labor Board did not create a liability of defendant to plaintiffs enforcible in this or any other court. Beginning with decisions under the similarly worded Transportation Act of February 28, 1920, 41 Stat. at L. 474, 49 U. S. C. §1 ff., and on down through the Stabilization Act of October 2, 1942, 56 Stat. at L. 765 (50 U. S. C. §961) and the War Labor Disputes Act of June 25, 1943, 57 Stat. at L. 163 (50 U. S. C. §1501) it is manifest that board directives are not either reviewable or enforcible excepting by the force of public opinion: Penna. R. R. Federation et al. v. Penna. R. R. Company et al., 267 U. S. 203, 213; General Committee, B. L. E. v. Missouri-K.-T. R. R. Co., 320 U. S. 323, 337; Employers Group of Motor Freight Carriers, Inc., et al. v. National War Labor Board et al., 143 F. (2d) 145; National War Labor Board et al. v. Montgomery, Ward & Co., Inc., 144 F. (2d) 528.

It is true that at first blush the language of the acts and of Executive Order No. 9250 (50 U. S. C. §314) seems to grant power in the respective boards to im-

pose a legal obligation, but our Federal courts have settled the point beyond question. In the General Committee v. Missouri Railway case, supra, Justice Douglas used the following language (p. 337) :

"Congress still places . . . great reliance on . . . conciliation, mediation and arbitration. . . . Courts should not rush in where Congress has not chosen to tread. . . . Any decision on the merits would involve the granting of judicial remedies which Congress chose not to confer."

No cases have been brought to our attention which challenge that proposition. Wernhardt et al. v. Koenig et al., 60 F. Supp 709, holds that change of wages is not permissible without approval of the National War Labor Board, but it does not follow that it is mandatory that their findings should be observed. Paris v. Metropolitan Life Ins. Co. et al., 68 F. Supp. 64, simply holds that an order of the War Labor Board authorizing retroactive increases in insurance commissions is lawful and supersedes a New York law prohibiting such retroactive commissions. The defense in that case was not the lack of enforcibility of the board directive, but the restriction placed on the employer by the New York statute.

The cases of Virginia Rwy. Co. v. System Federation, 300 U. S. 515, 545, and Texas & New Orleans Rwy. Co. v. Brotherhood of Rwy. and Steamship Clerks et al., 281 U. S. 548, relate to 1926 and 1934 amendments to the Transportation Act which contained statutory restrictions upon certain labor activities of carriers and the United States Supreme Court held that since Congress had forbidden such action, it was the duty of the courts to enforce the statutory law. Those decisions are in no way comparable to our case.

In the famous case of U. S. v. Montgomery, Ward & Co., Inc., et al., 150 F. (2d) 369, in which the Fed-

eral Government seized the Montgomery Ward organization, the court held the seizure a valid exercise of the powers of the President as Commander-in-Chief in war times and specifically declined (p. 382) to decide whether refusal to comply with the directive of the War Labor Board justified the seizure.

The most troublesome basis of plaintiffs' claim is their contention that they worked not for a fixed wage but for "what their services were worth". What they had earned, they say, was what the War Labor Board said was the value of their services. Of course, in quantum meruit, the standard is the fair, equitable, customary and prevailing market price or value of the services at the time and place rendered, to be established by the evidence of persons familiar with that price or value. It is not that fixed by any tribunal outside the court. Since, however, there need not be too great nicety in the statement of damages or of values, there is no harm in plaintiffs' claiming an amount equal to the board findings. It would remain for them to prove in court that that coincided with the prevailing standard.

Plaintiffs have pleaded an agreement to adopt the board directive. Such an agreement would be valid and enforcible if it exists. If, however, plaintiffs are relying upon mere submission to the War Labor Board as an agreement to abide by its directives, the law on the subject does not sustain their position. They have argued, however, the absence of any agreement whatsoever, which seems to be contrary to all reason, especially in the light of the substantial sum paid weekly by defendant to its employes.

Plaintiffs rely strongly on Martin v. Campanaro et al., 156 F. (2d) 127, a case decided by the United States Court of Appeals for the Second Circuit, in support of their claim for payment on the basis of a

quantum meruit. That case definitely sustains their position, but of course is not binding upon us, as it is not binding upon other Federal courts. Nor does that case decide as a matter of law that a situation similar to the present one creates in law the right to press a claim for additional wages. The court simply stated (p. 130) that in that case there was a contract "implied in fact" to pay the reasonable value, if no agreement was reached. While the case of Christie v. Port of Olympia, 27 Wash. (2d) 534, 179 P. (2d) 294, cites Martin v. Campanaro with approval, its decision is based on an express agreement to accept a formula of increase and not on a quantum meruit.

The fundamental fallacy in the reasoning of the Martin v. Campanaro case in our opinion lies in the failure to distinguish between a union contract of employment and that of individual employes. While the union no-strike pledge was no doubt sincere, it did not bind the individuals, who could, and many of whom undoubtedly did, sever their relations with defendant at will, especially since defendant was not engaged in defense work. In the absence of an express agreement to pay more than the amount actually paid, we cannot see how there could be implied in their relations an implied contract to pay more.

To say that there was no meeting of minds and hence no agreement of hire in this case is, in our opinion, a mere play upon words. There is one thing certain in this case and that is that each employe agreed to continue working for defendant and to receive therefor at least the amount of wages theretofore paid. Whether that agreement was tacit or express with each employe or through the bargaining representative we are not told, but plain common sense dictates that such an agreement existed.

If beyond that point there were conflicting desires or intentions, we cannot say and we believe it does not matter a great deal. We can enforce only what the parties agreed upon and not what they did not agree upon. They could have agreed that the payment of wages at the old rate was to be on account and that it should be augmented either by what the War Labor Board or the courts should find it to be worth.

We have no doubt that the employes were dissatisfied with their wages, that they hoped to compel defendant to increase their pay retroactively and that they never contemplated that defendant would adopt the short-sighted policy of discontinuing business, thereby depriving the employes of the valid instrument of economic pressure to compel payment of such increases. Defendant undoubtedly feared that such pressure would be brought and that it would eventually be compelled to pay retroactive increases.

To say, however, that plaintiffs hoped what defendant feared is far from saying either that their minds met to "imply in fact" that such an increase would be paid or that they agreed to work with an open clause in their contract. The course of events as detailed in plaintiffs' pleadings show clearly that defendant agreed to nothing except that it would pay the employes at the old rate if they would continue to work. Under Pennsylvania law that is all we can enforce.

We are not deciding that the payment of wages precludes the existence of a valid claim for additional compensation, although the acceptance of such wages raises a presumption that the parties agreed on that figure: Wallace v. Floyd, 29 Pa. 184. What we are deciding is that the facts pleaded do not give rise to a contract "implied in fact" that defendant would pay more than that amount.

A quantum meruit claim would imply that the parties were willing to render and accept personal services for a figure to be found by a court and jury and we believe nothing was farther from their minds.

As stated above, wage claims are not to be disallowed lightly. Defendants' objections nos. 20, 21 and 22 might be dismissed as speaking demurrers. We could allow plaintiffs to proceed upon their present pleadings on the theory that there should be a broad inquiry into the facts, but we are convinced that any such seeming liberality on our part would prove futile when the case came to trial. Therefore, we have attempted to eliminate preliminarily the problems presented by the present pleading.

It is our duty, however, to give the parties the opportunity to plead their best case—if the true facts permit such pleading—and therefore instead of entering judgment for defendant or dismissing the preliminary objections we will permit plaintiffs to amend their complaint, since amend they must in any circumstances: Stevens v. Smith, 310 Pa. 287, 289; Seitz v. Fulton National Bank, 325 Pa. 14, 16. We grant this privilege in the full assurance that plaintiffs will plead only such facts as they believe to be true.

We hold then that the claims of plaintiffs may be prosecuted in a joint suit in which other employes may intervene, but that the class action contemplated in Pa. R. C. P. 2230(a) does not lend itself to this situation and that the complaint filed is not sufficiently specific to support the claims of present plaintiffs or of any intervening plaintiffs. We do not decide whether the present suit tolls the statute of limitations for unnamed plaintiffs, for although Pa. R. C. P. 2230(a) might conceivably be invoked for that purpose, reliance on that proposition could prove disastrous to nonintervening claimants.

We further hold that reliance by plaintiffs upon the War Labor Board directive or upon the mere submission to said board of disputed points as a contract to carry out the board's directive, or on any "contract implied in fact" based upon employes' dissatisfaction with the wages paid after April 1, 1942, would result in a compulsory nonsuit at trial and that the case as pleaded would not support any other theory of recovery. We do not enter judgment for defendant, however, because of the possibility of the existence of grounds for the action in a fuller statement of the relations and negotiations between the parties. Our order must be interpreted in the light of these holdings.

Now, July 19, 1948, defendant's preliminary objections nos. 1 to 8 inclusive and no. 14 on count I and no. 16 on count II are dismissed; objections nos. 9 to 13, inclusive, and no. 15 are sustained but without prejudice to the right of present plaintiffs to continue together in this action, to amend the complaint to state properly their own claims or those of their fellow employes and without prejudice to the right of other employes to intervene in this action, if they see fit to do so. In count II preliminary objections nos. 17 to 22 inclusive are sustained and plaintiffs shall amend their complaint within 20 days after service of this order upon their counsel or suffer judgment of non pros.

OPINION SUR MOTION FOR JUDGMENT

HENNINGER, P. J., March 14, 1949.—Pursuant to our opinion filed in this case on July 19, 1948, sustaining defendant's preliminary objections to the maintenance of this as a class action, plaintiffs filed an amended complaint making it a joint action by all Donaldson employes claiming additional pay.

By stipulation of counsel the names of 26 named plaintiffs are stricken from the caption and from the

action as parties plaintiff because they have not joined in execution of the amended complaint. It was further stipulated that the signature of three persons, who are not named either in the caption or in the claim for damages should be stricken. This leaves about 140 plaintiffs with claims ranging from $16 to $480 apiece.

The amended complaint follows closely the original with one or two exceptions. It recites the operation of the company under a wage agreement with the Molders and Foundry Workers Union, the expiration of the agreement December 31, 1941, its extension to April 1, 1942, and the operation thereafter without an agreement, the continuation at work by reason of the union's no-strike pledge, submission of the wage dispute to the War Labor Board, its decision in favor of plaintiffs for the amount claimed from July 31, 1942, and defendant's closing down of its plant on May 29, 1943, terminating all relations between the parties.

Paragraphs 17 and 18 of the amended complaint form the crux of this case:

"17. Defendant by its actions as herein above set forth created an implied contract in fact between the defendant and the plaintiffs.

"18. The provisions of the said implied contract in fact were that defendant would pay plaintiffs the wage rates directed by the War Labor Board to be fair and equitable."

Defendants filed preliminary objections under two counts, count I relating to alleged defects in pleading, all of which were corrected by stipulation of counsel; count II by way of demurrer denies that the facts pleaded give rise to a contract implied in fact to pay plaintiffs any War Labor Board award and avers that the question has already been adjudicated against plaintiffs.

The latter part of defendant's demurrer is technically invalid, but actually true. We opined but did not adjudicate as to these plaintiffs that there was no contract implied in fact to pay them the War Labor Board award. Since the former procedural defects have been cured, we must now decide that particular question.

Much of our former opinion is pertinent to this case and we here repeat certain paragraphs.

Plaintiffs' union was collective bargaining agent for all Donaldson employes and had an agreement providing for certain hourly wage rates for the several classifications of employment. The agreement expired on December 31, 1941, and was extended to April 1, 1942. After April 1, 1942, the employes worked without contract, pending negotiations between the union and the company and the employes continued to receive each pay day the amount of wages which had been paid under the former agreement.

The employes continued to work because of the union's pledge not to strike during the war. On July 31, 1942, the parties submitted their differences to the War Labor Board and on August 10, 1942, a stipulation was signed by both parties that the matter of the amount of wages and vacation pay should be submitted to the War Labor Board. A mediator of that board, on January 28, 1943, found that from April 1, 1942, plaintiffs were entitled to certain rates that were higher than those paid up to April 1, 1942, and thereafter. Pending settlement of the dispute on the basis of the recommendation, the War Labor Board entered a directive order affirming the rates found by the mediator, but making it retroactive only to July 31, 1942, the date of referral to it of the dispute. The present suit is for the difference between the

amount directed to be paid and the amount actually paid between July 31, 1942, and May 29, 1943.

Defendant protested this order and was given a hearing before a panel of the War Labor Board, which sustained the former directive order and whose decision was affirmed by the War Labor Board on April 5, 1944. Meanwhile defendant ceased operations on May 29, 1943, and the relation of employer and employe between defendant and plaintiffs then terminated.

Clearly, the directive of the War Labor Board did not create a liability of defendant to plaintiffs enforcible in this or any other court. Beginning with decisions under the similarly worded Transportation Act of February 28, 1920, 49 U. S. C. §1 ff., and on down through the Stabilization Act of October 2, 1942 (50 U. S. C. §961) and the War Labor Disputes Act of June 25, 1943 (50 U. S. C. §1501) it is manifest that board directives are not either reviewable or enforcible excepting by the force of public opinion: Penna. R. R. Federation v. Penna. R. R., 267 U. S. 203, 213; General Committee, B. L. E. v. Missouri-K.-Y. R. R. Co., 320 U. S. 323, 337; Employees Group of Motor Freight Carriers, Inc., v. National War Labor Board, 143 F. (2d) 145; N. W. L. B. v. Montgomery, Ward & Co., 144 F. (2d) 528.

It is true that at first blush the language of the acts and of Executive Order No. 9250 (50 U. S. C. §314) seems to grant power in the respective boards to impose a legal obligation, but our Federal courts have settled the point beyond question. In the General Committee v. Missouri Rwy. Case, supra, Justice Douglas used the following language (p. 337) :

"Congress still places . . . great reliance on . . . conciliation, mediation and arbitration. . . . Courts should not rush in where Congress has not chosen to tread. . . . Any decision on the merits would involve

the granting of judicial remedies which Congress chose not to confer."

Plaintiffs have not pleaded an agreement to adopt the board directive. Such an agreement would be valid and enforcible if it exists. If, however, plaintiffs are relying upon mere submission to the War Labor Board as an agreement to abide by its directives, the law on the subject does not sustain their position. They have argued, however, the absence of any agreement whatsoever, which seems to be contrary to all reason, especially in the light of the substantial sum paid weekly by defendant to its employes.

Plaintiffs formerly relied on Martin v. Campanaro, 156 F. (2d) 127, a case decided by the United States Court of Appeals for the Second Circuit, in support of their claim for payment on the basis of a quantum meruit. That case definitely sustains their position, but of course is not binding upon us, as it is not binding upon other Federal courts. Nor does that case decide as a matter of law that a situation similar to the present one creates in law the right to press a claim for additional wages. The court simply stated (p. 130) that in that case, there was a contract "implied in fact" to pay the reasonable value, if no agreement was reached. While the case of Christie v. Port of Olympia, 27 Wash. (2d) 534, 179 P. (2d) 294, cites Martin v. Campanaro with approval, its decision is based on an express agreement to accept a formula of increase and not on a quantum meruit.

The fundamental fallacy in the reasoning of the Martin v. Campanaro case in our opinion lies in the failure to distinguish between a union contract of employment and that of individual employes. While the union no-strike pledge was no doubt sincere, it did not bind the individuals, who could, and many of whom undoubtedly did, sever their relations with defendant

at will, especially since defendant was not engaged in defense work. In the absence of an express agreement to pay more than the amount actually paid, we cannot see how there could be implied in their relations a contract to pay more.

To say that there was no meeting of minds and hence no agreement of hire in this case is in our opinion a mere play upon words. There is one thing certain in this case and that is that each employe agreed to continue working for defendant and to receive therefor at least the amount of wages theretofore paid. Whether that agreement was tacit or express with each employe or through the bargaining representative we are not told, but plain common sense dictates that such an agreement existed.

If beyond that point there were conflicting desires or intentions, we cannot say and we believe it does not matter a great deal. We can enforce only what the parties agreed upon and not what they did not agree upon. They could have agreed that the payment of wages at the old rate was to be on account and that it should be augmented either by what the War Labor Board or the courts should find it to be worth.

We have no doubt that the employes were dissatisfied with their wages, that they hoped to compel defendant to increase their pay retroactively and that they never contemplated that defendant would adopt the short-sighted policy of discontinuing business, thereby depriving the employes of the valid instrument of economic pressure to compel payment of such increases. Defendant undoubtedly feared that such pressure would be brought and that it would eventually be compelled to pay retroactive increases.

To say, however, that plaintiffs hoped what defendant feared is far from saying either that their minds

met to "imply in fact" that such an increase would be paid or that they agreed to work with an open clause in their contract. The course of events as detailed in plaintiffs' pleadings shows clearly that defendant agreed to nothing except that it would pay the employes at the old rate if they would continue to work. Under Pennsylvania law that is all we can enforce.

We are not deciding that the payment of wages precludes the existence of a valid claim for additional compensation, although the acceptance of such wages raises a presumption that the parties agreed on that figure: Wallace v. Floyd, 29 Pa. 184. What we are deciding is that the facts pleaded do not give rise to a contract "implied in fact" that defendant would pay more than that amount.

A quantum meruit claim would imply that the parties were willing to render and accept personal services for a figure to be found by a court and jury and we believe nothing was farther from their minds.

It remains then merely to discuss plaintiffs' present contentions. The relations between plaintiffs and defendant may well have been a contract implied in fact, that is one not spelled out in exact terms, but that finding is not conclusive on the merits of plaintiffs' claims.

Plaintiffs cite Hertzog v. Hertzog, 29 Pa. 465, in favor of such a contract, but that very case precludes their claims. In that case Justice Lowrie stated (p. 469):

"Every induction, inference, implication, or presumption in reasoning of any kind, is a logical conclusion derived from, and demanded by, certain data or ascertained circumstances. If such circumstances demand the conclusion of a contract to account for them, a contract is proved; if not, not. If we find, as ascertained circumstances, that a stranger has been

in the employment of another, we immediately infer a contract of hiring, because the principles of individuality and self-interest, common to human nature, and therefore the customs of society require this inference. . . . When parties claim by contract, the contract proved must be the rule by which their rights are to be decided."

It does not follow from the existence of an implied contract that it contained a clause to pay, besides the wages formerly and thereafter paid, any additional sum. Whether a contract is implied or express, courts can enforce only what has resulted from a meeting of the minds and we have already discussed the extent to which plaintiffs' and defendant's minds could have met.

We sympathize with plaintiffs' position and deplore their disappointment at the unexpected turn of events which prevented them from exerting economic pressure and the pressure of public opinion to enforce payment of the War Labor Board award, but Justice Lowrie in the Hertzog case, supra, also anticipated plaintiffs' argument for the substitution of our own opinion for the relevant law (p. 470) :

"The difficulty in trying causes of this kind often arises from juries supposing that, because they have the decision of the cause, therefore they may decide according to general principles of honesty and fairness, without reference to the law of the case. But this is a despotic power, and is lodged with no portion of this government."

We have already covered defendant's argument that because defendant continued to contest the War Labor Board award it must have agreed to pay such award. The language of the applicable legislation and regulations was strong and the principle of stare decisis at that time was weak and therefore defendant could

not rely too strongly upon existing decisions on similar statutes. If it intended to avoid increased wage payments, retroactively or prospectively, it behooved defendant to contest such payments to the fullest extent.

Plaintiffs' eighteenth paragraph is equivocal in its language. It could be interpreted to read that the "contract implied in fact" was to pay the War Labor Board award. However, in view of the fact that the claim for increased wages is from April 1, 1942, and not from July 1, 1942, plaintiffs must now be contending that the "contract implied in fact" was that they would be paid not an award made by the board, but at a rate approved as fair and equitable by the board.

The net result is, however, the same. The only contract to be implied from the facts is that, despite plaintiffs' hopes and defendant's fears, defendant undertook to pay no more than the previous wages, unless it was *compelled* to do so. There was no compulsion either in the War Labor Board award or in their findings and therefore there was no implied contract to pay more than was currently paid.

Nor is this a matter for a jury. Plaintiffs have pleaded all the facts in the case and for our purposes we accept them as verity. Having all the facts, it becomes a question of law whether or not from the admitted facts there is a contract implied in fact to pay the War Labor Board award or findings: Reitmyer v. Coxe Bros. & Co., Inc., 264 Pa. 372, 376; Home Protection Building & Loan Assn. Case, 143 Pa. Superior Ct. 96, 100.

Defendant has filed seven preliminary objections under count II together with an unnumbered petition for judgment on the pleadings. The preliminary objections are rather in the nature of reasons or conclusions of law upon which the motion is based. Since

our decision is to grant the motion, we need not pass upon the individual preliminary objections.

Now, March 14, 1949, defendant's motion for judgment on the pleadings is granted and it is ordered and decreed that judgment in the above-captioned action—as fully captioned and not as here abbreviated—be entered in favor of defendant and against plaintiffs named in the amended complaint to no. 120, April term, 1948, excluding therefrom those named in paragraph 2 of the stipulation of counsel filed January 4, 1949.