**KEENE CORPORATION,**
**Plaintiff-Appellee,**

v.

**John F. CHAPPLE, Defendant-Appellant.**

**No. 80–1572.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1982.
Decided Sept. 9, 1983.

John F. Cook, Wiczer & Nakon, Ltd., Chicago, Ill., for defendant-appellant.

Michael D. Sher, Chicago, Ill., for plaintiff-appellee.

Before PELL and CUDAHY, Circuit Judges, and BARTELS, Senior District Judge.*

CUDAHY, Circuit Judge.

Appellant Chapple appeals from an order granting summary judgment in favor of Keene Corporation ("Keene"). The case arose out of a dispute concerning the terms of an option to purchase real estate. The district court held that Keene had effectively exercised its option to purchase and ordered Chapple to convey the land. We affirm.

*Background*

John F. Chapple became the successor-lessor on a lease assigned to him on December 23, 1968. Keene Corporation became the successor-lessee on the same lease in 1971. This lease covered improved real es-

---

* The Honorable John R. Bartels, Senior District Judge for the Eastern District of New York, is sitting by designation.

tate commonly known as Lot 11. The lease contained an option to purchase Lot 11 and an additional option to purchase unimproved real estate known as Lot 10. The option provided for decreases in the purchase price of Lot 11 tied to the length of the lessee's occupancy as follows:

24. Landlord grants to Tenant the option to purchase the Premises [Lot 11] during the term hereof and during the times and at the prices hereinafter set forth:

After five (5) years from
    Date of Occupancy[1]    $267,000.00
After six (6) years from
    Date of Occupancy       $260,000.00
After eight (8) years from
    Date of Occupancy       $245,000.00
After ten (10) years from
    Date of Occupancy       $235,000.00

In the event Tenant shall exercise any of the above options, Tenant shall have the further option to acquire Lot 10 as vacant land at the established prices of the property in the Industrial District at that time.

On July 31, 1978, after the tender of August rent, Keene sent two letters to Chapple notifying him of the exercise of the options on Lots 10 and 11.[2] Keene was then in the ninth month of the ninth year of occupancy. The notification for Lot 11 quoted a purchase price of $235,000, which was the price at which Keene could purchase the lot after having been a tenant and paid rent for ten years. The notice was accompanied by a check for ten per cent of the purchase price, less the previously paid security deposit.

By telegram dated August 21, 1978, however, Chapple notified Keene that, while he accepted the exercise and the down payment, the proper purchase price was *$245,000*, not $235,000. Chapple suggested a closing date of October 3, 1978.[3] Keene in turn responded by telegram on August 30, 1978, indicating that its intention was to exercise the option to purchase after November 1, 1978 for $235,000.[4] Keene there-

1. The date of occupancy was November 1, 1968.

2. July 31, 1978
   Mr. John F. Chapple
   545 South Atlantic Boulevard
   Fort Lauderdale, Florida 33316
   Dear Mr. Chapple:
   Keene Corporation hereby exercises its option to purchase the premises as granted under the lease between John Chapple Company and American Bowser Corporation dated May 31, 1968.
   Pursuant to the provision of said lease there is enclosed check in the sum of $17,538.40 computed as follows:

   | Purchase Price | $235,000.00 |
   |---|---|
   | 10% | 23,500.00 |
   | Less: Security Deposit | 5,961.60 |
   | | $17,538.40 |

3. I accept the exercise dated July 31, 1978 of your option to purchase the premises you are occupying under the lease between John Chapple Company and American Bowser Corp. dated May 31, 1968 and acknowledge your deposit of $17,538.40 for such purchase. Pursuant to the terms and conditions of the lease, your date of possession was November 1, 1968 and *your option price during the period of November 1, 1976 to November 1, 1978 is $245,000 rather than $235,000 as stated in your letter.* I suggest closing on Tuesday, October 3, 1978 at an hour and place

mutually convenient in the Chicago area at the option price.
   John F. Chapple
   (emphasis supplied)

4. August 30, 1978
   Mr. John F. Chapple
   545 South Atlantic Boulevard
   Ft. Lauderdale, Florida 33316
   Dear Mr. Chapple:
   Keene Corporation has received your telex dated August 21, 1978. In that telex you misconstrue Keene's notice of exercise dated July 31, 1978. Keene's intention in that notice was to exercise its option to purchase after November 1, 1978. This intention was clearly evidenced by Keene's use of the $235,000 price in its July 31, 1978 letter. Therefore, your proposed closing date of October 3, 1978 may be inappropriate as not being more than ten (10) years after the date of occupancy.
   Please have your attorney contact Howard A. Mileaf, Secretary, Keene Corporation, 345 Park Avenue, New York, New York 10022. Telephone (212) 421–7122 for purpose of arranging a closing of the sale of the premises on a date more than ten (10) years after the date of occupancy.
   Very truly yours,
   KEENE CORPORATION
   Water Pollution Control Division
   /s/ P.A. Thomas
   P.A. Thomas
   Controller

after paid its rent in September and October and Chapple accepted the payments. But Chapple then refused to convey the land in accordance with the option and Keene sued. The district court granted summary judgment for specific performance in favor of Keene. Chapple appeals. The parties have agreed that the lease is to be construed and enforced in accordance with the laws of the State of Illinois.[5]

### Was the Option Effectively Exercised?

The district court held that the notice of exercise given by appellee on July 31, 1978, constituted a valid exercise of the option. The court concluded that the quotation of the $235,000 purchase price in the July notice and the appellee's telegram of August 30, 1978, clearly indicated the appellee's intention to purchase in the period between November 1, 1978 and November 30, 1978, when the $235,000 price was available.[6] Therefore, the court held that the appellant's insistence upon the $245,000 purchase price and refusal to convey at $235,000 constituted a breach of contract.

Both parties agree that tender of the purchase price was not necessary to exercise effectively the option contract and that notice of an intent to exercise would be sufficient.[7] Chapple, however, contends that the various notifications given by Keene were ineffective attempts to exercise because they were not in exact conformity with the option terms as of July 1978.

These terms, appellant claims, required the application of the $245,000 purchase price in effect during July and proscribed exercise of the option in July with an intent to purchase in November at the November price.

Keene agrees that notice of a decision to exercise an option is only sufficient to bind the parties if in exact accord with the option terms. The appellee claims, however, that the notifications of July and August were in exact accord with these terms. Under the resulting contract, appellee contends it became obligated to continue as a rent-paying tenant until ten years from the date of occupancy and to purchase Lot 11 in November for $235,000.

We think the district court's reading of the contract is correct. Since the lease provided that the lessor's offer to sell would be modified automatically upon the passage of time and the lessee's continued remittance of rent payments, we see no reason the lessee could not accept the offer in advance of the next automatic price reduction and still get the advantage of the lower price, as long as it continued to pay rent. Indeed, the original (pre-1971) version of the option clause required the lessee to give 60 days advance written notice of exercise,[8] and under certain circumstances this notice would have been given prior to the last (or 10-year) price reduction.[9] Since the $235,-

---

**5.** Chapple is a Florida resident and Keene is a Delaware corporation with principal offices in New York. This action was brought in the United States District Court for the Northern District of Illinois, Eastern Division, based on diversity of citizenship.

**6.** Given that the date of occupancy was November 1, 1968, the purchase price schedule may be restated as follows:

| On or After November 2, 1973 | $267,000.00 |
| On or After November 2, 1974 | $260,000.00 |
| On or After November 2, 1976 | $245,000.00 |
| On or After November 2, 1978 | $235,000.00 |

The lease terminated December 1, 1978.

**7.** "Where an option agreement speaks of 'purchase' within a specified time, without reference to notice or payment by the optionholder,

courts have disagreed on the question of whether tender or payment of the option price is required to exercise the option ... [A] majority of jurisdictions ... have held that notice of an intent to exercise an option is sufficient to bind the optionor." *Loose v. Brubacher,* 219 Kan. 727, 549 P.2d 991, 996 (1976).

**8.** The deletion of this 60-day notice provision removed the lessee's *duty* to give early notice. We have no basis, however, to believe that the deletion in any way affected the lessee's *power* to give early notice.

**9.** With the deleted provision reinstated, the option provision read, in pertinent part, as follows:

24. Landlord grants to Tenant the option to purchase the Premises during the term

000 price was available only for the last 29 days of the lease, November 2, 1978 (10 years from date of occupancy), to November 30, 1978 (when the lease expired), the lessee would have been required to notify the lessor of his intent to purchase the property for $235,000 at least 60 days before November 30. This date would have fallen in the prior period when the agreed price was $245,000. Unless we read the contract as allowing notice of intent to purchase prior to November 1978, under the original contract the lessee apparently could not under certain circumstances have effectively exercised its option to buy for $235,-000.

Further, we do not see any basis to imply a limitation on the lessee's power to exercise the option so that it could get the land for $235,000 only if it notified Chapple in November 1978 of its desire to purchase. Chapple's apparent interests were either to receive monthly rent payments of $2,980 or a purchase price that would compensate him for rents expected under the lease but not received because of an early exercise of the option. Accordingly, the sale price dropped as the lessee forbore from exercising the option and paid rent instead. Thus, as long as Keene satisfied the occupancy-rent payment condition up to November 1978, we see no reason it could not have accepted Chapple's offer to sell for $235,000 prior to November 1978.

█ Having concluded that the appellee was empowered under the option to exercise the option in July and purchase in November for $235,000, the next consideration is whether the notifications given by the appellee were sufficient to exercise the option.

If no specific mode of acceptance is specifically fixed in the offer, the acceptance need not be in any particular form nor evidenced by express words. *Calo, Inc. v. AMF Pinspotters, Inc.,* 31 Ill.App.2d 2, 176 N.E.2d 1, 5 (1961).

The notice of July 31, 1978, unequivocally indicated to the appellant the appellee's decision to exercise. The quotation of the $235,000 purchase price, taken together with the earlier payment of August rent, also communicated to the appellant the appellee's intention to purchase the Lot in November. Any possible doubt as to the appellee's meaning was removed by the August 30 telegram and the continued rent payments for September and October.

In summary, the appellee effectively exercised its option to purchase Lot 11. By this exercise Keene became obligated to continue as a rent-paying tenant through November 1, 1978 and to purchase Lot 11 in November of 1978 for $235,000. Since the appellee completed its required rental payments, the refusal of the appellant to convey Lot 11 for $235,000 was a breach of the lease and entitled the appellee to specific performance.

AFFIRMED.

---

hereof and during the times and at the prices hereinafter set forth:

After five (5) years from Date of Occupancy $267,000.00
After six (6) years from Date of Occupancy $260,000.00
After eight (8) years from Date of Occupancy $245,000.00
After ten (10) years from Date of Occupancy $235,000.00

In the event Tenant shall exercise any of the above options, Tenant shall have the further option to acquire Lot 10 as vacant land at the estimated prices of the property in the Industrial District at that time. If Lot 10 has been improved pursuant to Paragraph 2 herein, Tenant must also purchase Lot 10 and the above price shall be increased by the land value of Lot 10 at the time and the construction cost of the improvement thereon. *Such option shall be exercised by the Tenant only upon giving Landlord sixty (60) days advance written notice thereof* and accompanied by payment of a down payment of a minimum of ten percent (10%) of the purchase price, which, however, may include the security deposit.

(emphasis supplied).