THE ROCK ISLAND BANK, Plaintiff-Appellee, v. TIMOTHY O. ANDERSON *et al.*, Defendants (First Federal Savings and Loan Association of Davenport, Defendant-Appellant).

Third District    No. 3—88—0184

Opinion filed February 3, 1989.

BARRY, J., dissenting.

Conway & Shoemaker, of Aledo (Dwight L. Shoemaker, of counsel), for appellant.

Michael J. Galvin, of Rock Island, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This case presents a controversy between two financial institutions, each of whom claim a preferred security interest in a mobile home. For purposes of clarity, we do not discuss extraneous and immaterial details appended to the dispute. The simple scenario is that the Andersons purchased a mobile home from the defendant, First Federal Savings and Loan Association of Davenport, Iowa (First Federal), on October 28, 1982. Pursuant to statute, First Federal perfected its security interest in the mobile home by filing same with the Illinois Secretary of State and obtaining a notation on the title document to that effect. Ill. Rev. Stat. 1987, ch. 95½, par. 3—202(b).

Some three months later, the Andersons placed the mobile home on leased ground in Mercer County, Illinois. They next proceeded to place it on a cinder block foundation, add a room to it and build an attached garage.

Almost three years later, in August of 1985, the Andersons borrowed money from the Rock Island Bank (Bank). For its security, the Bank took a trust deed along with an assignment of the leasehold interest where the mobile home was situated. What next occurred was that the Andersons defaulted on their loan with the Bank and the Bank filed a complaint to foreclose their trust deed.

At a hearing on that foreclosure suit, the trial court found a priority lien in favor of the Bank and against First Federal, assigning as a reason that First Federal was required to make a second filing of its security claim once the mobile home became attached to the real estate. (Ill. Rev. Stat. 1987, ch. 26, par. 9—313(7).) We disagree.

The trial judge also ruled that the Bank could not pursue its foreclosure because the Bank possessed only a leasehold interest and not the fee interest in the real estate. Again, we disagree.

An analysis of the statutory language relied on by the trial judge causes us to conclude that those statutory directives pertain only to persons who seek to obtain a security interest in a chattel which has not as yet been perfected. In the case at hand, however, the security interest of First Federal had been perfected some three years earlier. The statute relied on by First Federal provided that its security interest could be perfected by proceeding as it did. The statute uses the word "perfected." Black's Law Dictionary defines "per-

fect" as "complete, finished, executed, enforceable, without defect, merchantable and marketable." (Black's Law Dictionary 1351 (3d ed. 1933).) It goes on to define a "perfect instrument" as "one that is good as to all the world." (Black's Law Dictionary 1351 (3d ed. 1933).) In short, having perfected its security interest according to statute, there was nothing further that First Federal need do. Its security interest was perfect as defined in Black's Law Dictionary. That is to say, it was complete, finished and enforceable. It was good as to all the world.

Knowing that a mobile home already on the premises was to serve as security for a loan, the Bank could have protected itself by asking to see the title document and by checking with the Illinois Secretary of State. Had it done so, the prior lien of First Federal would have been discovered. First Federal, on the other hand, or any financial institution for that matter, is not in a position to continuously monitor and track the peregrinations of a mobile home. Nor are they required to do so.

■ Finally, we know of no reason why the Bank could not foreclose its trust deed whether or not it possessed the fee interest in the real estate. Of course, its interest would be no greater than the mortgagor could convey and that interest was, as we have indicated, inferior to the lien of First Federal.

For the reasons stated, the judgment of the circuit court of Mercer County is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

WOMBACHER, J., concurs.

JUSTICE BARRY, dissenting:

The issue we are asked to determine is whether a prior perfected security interest in a mobile home is entitled to priority over a later recorded lien on real estate to which the mobile home became affixed. The issue we are not asked to review is the extent of the Bank's present foreclosure rights in the subject property. As I see it, the majority has chosen to second-guess a purely advisory opinion gratuitously decided by the trial court on the former issue. The majority then proceeds to express its disagreement with the trial court's determination of the latter issue from which neither party has appealed. Under the circumstances, and for the further reason that I disagree with my colleagues on the merits, I respectfully dissent.

Although neither party has chosen to discuss appellate jurisdiction and the majority rejects the question of jurisdiction as extraneous and immaterial, a review of the procedural posture of this case readily reveals that the parties to this appeal have no right to appellate review.

It appears to me that the majority raises the question of the extent of the Bank's foreclosure rights *sua sponte* and finds error as a predicate for reaching the "merits." In my opinion, the circuit court correctly determined from the documents of record that the Bank's present interest in the leased property is merely possessory. In Illinois the law is well settled that a mortgagee's right to actual possession and control of the mortgaged property upon default is not "automatic," but must be invoked by a motion by the mortgagee in the foreclosure action. (*Marcon v. First Federal Savings & Loan Association* (1978), 58 Ill. App. 3d 811, 374 N.E.2d 1028, 1030, citing Ill. Rev. Stat. 1975, ch. 95, par. 22b.53 (now Ill. Rev. Stat. 1985, ch. 110, par. 15—303).) As noted by the *Marcon* court, "after a default and until [the mortgagee exercises its right to actual] possession, a mortgagee may discard the mortgage entirely."

In the case before us, the Bank has not moved for an order entitling it to exercise its possessory right. By the terms of the lease, the Bank may acquire an option to purchase the subject real estate for $15,000 (credit given for all prior rent payments) after January 1, 1989. On the other hand, the Bank may choose never to acquire a greater interest in the real estate. Unless and until the Bank exercises its rights based on its present interest or acquires a title interest in the property the Bank is not entitled to an order of foreclosure, judicial sale and other relief as sought in its complaint, and there is no actual conflict between the interests of the Bank and First Federal. Without a present, actual controversy between the parties, the issue we are asked to review is premature, or "moot" (*In re Matter of Creager* (1944), 323 Ill. App. 594, 56 N.E.2d 649, 652), and further discussion is merely advisory.

Nevertheless, in view of the positions assumed by the majority I am constrained to express my views on the "merits" of this appeal as well. The circuit court ruled that First Federal lost its priority by failing to make a fixture filing in the county office of the recorder of deeds pursuant to section 9—313 of the Uniform Commercial Code—Secured Transactions (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 9—313). Citing only to the authority of Black's Law Dictionary (3d ed. 1933) and in direct defiance of section 9—313 of the Code, the majority has determined that First Federal's 1982 perfection of its security interest in the mobile home as a motor vehicle gave it priority over all sub-

sequent interests for all time.

The Code does not define "perfection" as such, but does require fixture filing for goods which are to become a fixture if a secured party is to maintain priority over conflicting interests of an encumbrancer or owner of real estate. (Ill. Rev. Stat. 1987, ch. 26, pars. 9—302(1)(d), 9—313(4), (7).) The Code clearly contemplates changes in collateral and provides a simple solution for perfecting a security interest in a mobile home that the secured party contemplates will become affixed to land. The wary lender is advised to prefile its financing statement or mortgage in the county where the home is to become affixed, and this "fixture filing" will protect the secured party's priority status as against subsequent encumbrancers of the real estate. Ill. Rev. Stat. 1987, ch. 26, pars. 9—313, 9—402.

Notwithstanding the foregoing statutory authority, I might agree that the Bank was precluded from denying First Federal's priority lien if, in fact, (a) First Federal could not have contemplated that the mobile home would become affixed to realty; and (b) the Bank had knowledge that the residence on the subject property in 1985 had been a 1974 "double-wide" Fuqua mobile home prior to its attachment in 1983. (See *Township of Commercial v. Block 136, Lot 2, Now Lot 13* (1981), 179 N.J. Super. 307, 431 A.2d 862 (citing New Jersey equivalent of Ill. Rev. Stat. 1987, ch. 26, par. 9—401).) But such facts are inapposite to this case.

According to defendant Tim Anderson, he apprised First Federal's loan officer of his plans to affix the "double-wide" mobile home during negotiations for its sale in 1982. There is no evidence of record to the contrary. Yet the majority declares an iron-clad rule absolving First Federal of any duty to inspect its collateral or to give reasonable notice of its interest after the mobile home became affixed to the land.

The record establishes that when the Andersons moved the home to the subject real estate around January of 1983, they placed it on a cinder block foundation. They removed the tongue, re-sided it, re-roofed it, attached a garage and added a room. These improvements were completed in 1984 and were financed primarily by a "master loan" made by Rock Island Bank to the Andersons' business operation known as Progressive Farms, Inc. There is no issue in this case as to when the home became a fixture. The parties agree that it was affixed to the land well before 1985 when the Andersons applied for the $22,500 loan which gave rise to this suit. Further, there is no indication of record that the home bore any resemblance whatsoever to a mobile home when the Andersons applied for the $22,500 loan. Nor is

there any support of record for the majority's conclusion that the Bank knew that its security had ever been on wheels. Yet the majority assumes that the Bank knew that a "mobile" home was on the subject real estate when it approved the loan in 1985 and places upon the Bank a duty to search the records of the Secretary of State.

In my opinion, a mobile home such as the one here at issue—that gives every appearance that it will become affixed to realty, and that the purchasers tell the financing officer they intend to affix to realty, and that in fact is thereafter affixed and never again "mobilized"—is precisely the type of "goods which are to become fixtures" for which a fixture filing is required for proper perfection under section 9—313 of the Code. Lacking any legal, factual or equitable support for the majority's result, I would agree with the circuit court that, pursuant to section 9—313(7), First Federal's chattel interest in the home in this case is subordinate to the Bank's interest.