### In re VALLEY LIQUORS, INC., Debtor.

### The FIRST NATIONAL BANK OF CHICAGO, Plaintiff,

v.

**VALLEY LIQUORS, INC., Debtor and Debtor in Possession in Case No. 88 B 4599, Abraham Schechter, as Agent for Mar–Salle, Inc., Daviess County Corp., Medley International, Inc., Medley Distilling Co., Medley Wine Co., Abraham Schechter, Vivian Schechter, Robert Schechter, Jane Schechter, and Jeffrey Schechter, and Hans Cornell Champagne Cellers, Inc., Defendant.**

**Bankruptcy No. 88 B 4599.**
**Adv. No. 88 A 912.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 10, 1989.

Robert W. Berliner, Jr., Berliner and Krasnow, Chicago, Ill., for defendant Abraham Schechter.

Pamela S. Hollis, Hollis & Johnson, Chicago, Ill., Trustee of the Estate of Valley Liquors, Inc.

Sandra T. Rasnak, Chicago, Ill., Office of the U.S. Trustee.

Michael L. Stone, Fagel, Haber & Maragos, Chicago, Ill., for plaintiff First Nat. Bank of Chicago.

Christopher G. Walsh, Rothschild, Barry & Myers, Chicago, Ill., for Hans Cornell Champagne Cellers, Inc.

## MEMORANDUM OPINION ALLOWING DEFENDANT SCHECHTER'S MOTION TO DISMISS ADVERSARY COMPLAINT

JACK B. SCHMETTERER,
Bankruptcy Judge.

The Debtor held an option to purchase the property in which it operated. It sold that option for $140,000.00. Plaintiff claims a prior lien on all net proceeds of sale. The First National Bank of Chicago as Plaintiff ("First National"), filed this adversary complaint seeking determination of the parties' respective rights to the proceeds of sale of the option by Debtor ("Debtor", or "Valley Liquors") to V.I.P. Industrial Development Co. ("V.I.P."). Defendant Abraham Schechter, was sued as Agent for several interested persons and entities. He moved to dismiss the complaint for asserted failure to state a claim upon which relief may be granted. He argues that First National lacks and fails to plead any valid or perfected security interest in or to the sale Proceeds. The related bankruptcy case was filed under Chapter 11 but has since been converted to one under Chapter 7 of the Bankruptcy Code. The Debtor's Trustee sought to be substituted as the party in interest. No objections were asserted thereto. Therefore, Trustee was substituted as Defendant in place of Valley Liquors. Trustee supports movant's argument that First National failed to perfect any security interest in Debtor's Option. However, Trustee does not seek dismissal. Trustee has not counterclaimed for relief. The extent of her claims in the sale proceeds presently are uncertain on this record. However, her brief clearly asserts intent to attack lien interests asserted by all parties asserting lien interests in the sale proceeds.

## JURISDICTION

■ The Court has core jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2). The suit concededly involves sale proceeds of Debtor's property. Under 28 U.S.C. § 157(b)(2)(E) the proceeding is core because it seeks turn over of estate property. Under § 157(b)(2)(K) this case requires determination of the validity, extent and priority of liens or other interests asserted or which could be asserted by Plaintiff and Defendants in and to said estate property. Furthermore, under § 157(b)(2)(B) Plaintiff's suit amounts to a secured claim against the estate.

## STANDARDS ON MOTIONS TO DISMISS

■ In order for Schechter to prevail on his motion to dismiss, it must clearly appear from the pleadings that First National can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99,

2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308 (N.D.Ill.1983). The issue is not whether First National will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When reviewing a defendant's motion to dismiss, the Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir.1976); *Westland v. Sero of New Haven, Inc.*, 601 F.Supp. 163, 166 (N.D.Ill.1985); *Grant v. City of Chicago*, 594 F.Supp. 1441, 1445 n. 6 (N.D.Ill.1984); *Morgan v. DeRobertis*, 582 F.Supp. 271, 273 (N.D.Ill.1984).

## UNDISPUTED FACTS

The following pleaded facts are undisputed for purposes of considering the motion to dismiss.

1. Plaintiff First National is a banking corporation organized under the laws of the United States of America having its principal place of business within the State of Illinois.

2. Defendant Valley Liquors is an Illinois corporation formerly having its principal place of business within the State of Illinois. On March 23, 1988, Valley Liquors filed its petition for relief under Chapter 11 of Title 11, United States Code. After the filing of this adversary proceeding, Valley Liquor's case was converted to a Chapter 7 and Pamela S. Hollis was appointed trustee of the Valley Liquor estate on or about December 12, 1988.

3. Defendant Abraham Schechter, as agent for Mar–Salle, Inc., Daviess County Corp., Medley International, Inc., Medley Distilling Co., Medley Wine Co., Abraham Schechter, Vivian Schechter, Robert Schechter, Jane Schechter, and Jeffrey Schechter ("Schechter"), resides within the Northern District of Illinois. (Complaint ¶ 6)

4. Defendant Hans Cornell Champagne Cellers, Inc. ("Cornell") is a corporation doing business within the State of Illinois. (Complaint ¶ 7)

5. Prior to filing its petition for relief, Valley Liquors entered into a lease dated September 8, 1978, by and between Aurora National Bank, as Trustee under Trust No. 1415 (as Lessor), and Valley Liquors, Inc. (as Lessee) for the lease of certain real estate commonly known as 1703 North Eastwood Drive, Aurora, Illinois. The lease granted to Valley Liquors an option to purchase said real estate under Section 2701 of the lease which provides in pertinent part:

> Section 2701. The Lessee is hereby specifically given the option to purchase the demised premises between the end of the fifth year and the end of the term for the sum of $995,000.00. Six months' prior written notice of the intention of the Lessee to exercise this option and to purchase the premises must be given ... (the "Option to Purchase")

6. On November 9, 1987, Valley Liquors served Lessor under the lease with written notice of its intention to exercise the foregoing option. (Memorandum of First National Bank opposing Schechter's motion, at p. 4.).

7. On July 29, 1988, an Order was entered herein authorizing and directing Valley Liquors to sell said Option to Purchase to the V.I.P. Industrial Development Co. for the amount of $140,000.00 (the "Option Proceeds"). The Order authorized such sale free and clear of all liens, claims and encumbrances, and directed that all such liens, claims and encumbrances attach to the proceeds of sale, and further directed the deposit of the Option Proceeds in a segregated, interest-bearing escrow account subject to such liens, claims and encumbrances.

8. The Option sale was closed. Option Proceeds amounting to $140,000.00 have been paid by V.I.P. Industrial Development Co. to Valley Liquors or to its counsel on behalf of Valley Liquors. The Trustee should now be holding those funds segregated and invested.

9. Prior to filing of Debtor's Chapter 11 Petition, First National made occasional advances to Valley Liquors under a revolving line of credit, the terms of which were set forth in a Loan and Security Agreement dated February 18, 1986, by and between First National and Valley Liquors. All loan advances were to be secured thereunder by security interest granted by borrower to lender in borrower's personal property including its "General Intangibles". (Loan & Sec. Agree. ¶ 5.1, at p. 16). "General Intangibles" are defined to include *inter alia* "all choses in action, causes of action and all other intangible personal property of Borrower of every kind and nature...." (Loan & Sec.Agree. ¶ 1.1(x) at p. 4).

10. Pursuant to said Loan and Security Agreement, Valley Liquors made, executed and delivered to First National its Revolving Loan Note dated March 18, 1986, in the original principal amount of $13,000,000.00, due in the amount of aggregate unpaid advances made under the Loan and Security Agreement, plus interest as set forth therein.

11. First National recorded certain financing statements in the Office of the Secretary of State of Illinois on March 19, 1986. Those covered *inter alia* the following types of property:

All of Debtor's now owned and existing and hereafter acquired accounts, inventory, machinery, equipment, fixtures, chattel paper, *general intangibles,* instruments and documents wheresoever located ...

(Emphasis supplied.) (Complaint, Paragraph # 14.)

12. Defendant Schechter may have or claim some interest in and to the Option Proceeds under and by virtue of a real estate mortgage dated February 13, 1987, executed by Valley Liquors, Inc. in favor of said Defendant, securing a contingent obligation not to exceed $10,000,000.00. Said mortgage was recorded in the office of the Recorder of Deeds of Kane County, Illinois on June 1, 1987.

13. Defendant Cornell may have or claim some interest in and to the Option Proceeds under and by virtue of a judgment entered on February 25, 1988, in Case No. 88 C 1606 in the United States District Court for the Northern District of Illinois, Eastern Division.

### DISCUSSION

First National contends that the Option to Purchase constituted one of the "General Intangibles" of Valley Liquors provided as security in the Loan and Security Agreement, and was therefore subject to the perfected security interest of the Bank. On that contention rests its asserted secured claim to proceeds of the Option sale.

The Loan and Security Agreement of February 18, 1986, clearly granted First National Bank a security interest in all "General Intangibles" of Valley Liquors. Such security interest was perfected by filing on March 19, 1986, a Uniform Commercial Code financing statement with the Illinois Secretary of State. However, Schechter argues that the Option was an interest in real estate, not a "General Intangible", and therefore First National has no perfected security interest in the Option Proceeds.

Under the Uniform Commercial Code as adopted in Illinois a "General Intangible" is any personal property other than goods, accounts, chattel paper, documents, instruments, and money. Ill.Rev.Stat.1987, Ch. 26, § 9–106. An interest in real estate, however, is not a general intangible, because it is not personal property and is expressly excluded from application of the Uniform Commercial Code. Ill.Rev.Stat. 1987, Ch. 26, § 9–104(j).

1. *Even if not Exercised, the Option was a Real Estate Interest and the Asserted Pledge Thereof was not Properly Recorded.*

Schechter and Trustee have argued that even if the leasehold option was not exercised, it was still an interest in real estate, not a "General Intangible" perfected by the Uniform Code recording. This Court has found no Illinois case law directly addressing this issue. However, from

present case law it does appear that under Illinois law an interest in a leasehold option is realty rather than personalty. Therefore, such interest must be recorded with the Recorder of Deeds, not by U.C.C. filing with the Secretary of State.

In *In re Girga*, 15 Ill.App.3d 916, 305 N.E.2d 565 (1st Dist.1973), aff'd, 60 Ill.2d 27, 322 N.E.2d 798 (1975), the court impliedly found that an option to purchase real property is a realty interest which is properly recorded with the County Recorder. In that case two options to purchase had been given on the same property. Both options were recorded with the County Recorder of Deeds in the county where the property was located. The court held that the option to Girga, dated and recorded prior to the option to Antoniou, had priority over the one to Antoniou. The Court clearly assumed that an option to buy real estate had effect when recorded as realty with the Recorder of Deeds.

In *Garlick v. Imgruet*, 340 Ill. 136, 172 N.E. 164 (1930), the court found that it is common for leases to contain a provision conferring an option upon the tenant to purchase the property. Furthermore, the court found that the contract embodied in the lease is indivisible. Therefore, a subsequent purchaser from the lessor was charged with notice of the lease including the option and he was bound by it. A finding that the lease was indivisible indicates that the option is a part of the lease and cannot be considered separately as personalty.

Section 9–104(j) of the Uniform Commercial Code as adopted by Illinois excludes "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder" from its coverage. *Ill. Rev.Stat.*1987, Ch. 26. Interpreting the meaning of § 9–104(j) of the Uniform Commercial Code, the Eighth Circuit in *In re Standard Conveyor Co.*, 773 F.2d 198, 204 (8th Cir.1985), citing to a Third Circuit opinion [1], found that "the intent of the Legislature was to exclude from the filing and perfection provisions of Article 9 the use of a lease as collateral for a loan." Accord-

ingly, the Eighth Circuit found that an Article 9 security interest in the underlying proceeds of a real estate lease, i.e. rents, is expressly precluded by U.C.C. 9–104(j). *In re Patterson*, 64 B.R. 189 (Bankr.N.D.Ill. 1986), found *In re Standard Conveyor Co.*, controlling for the holding that rents are not general intangibles within the meaning of the Uniform Commercial Code. It follows that just as the rents flowing under a lease cannot be U.C.C. Article 9 collateral for a loan, neither can a leasehold option to purchase realty be collateral under Article 9.

*Keogh v. Peck et al.*, 316 Ill. 318, 147 N.E. 266, 269 (1925), reh'g denied, relied on by First National is not contrary to this Court's holding. The court in *Keogh* found the sale of an option to be an executed contract saying that,

> The lands, or an interest therein, are not sold. The contract is not executed as to them, but the option is as completely sold and transferred *in praesenti* as a piece of personal property instantly delivered upon payment of the price.

*Id.*, 147 N.E. at 269. *Keogh* did not indicate that the option is personal property, only that the option was transferable by the original lessee. The court also ruled that "An option, contained in a lease, concerns the land and the estate conveyed by the lease and the mode of the enjoyment of the demised premises." *Id.*, 147 N.E. at 270. Therefore, it was held that the contract ran with the land and was assignable.

Having found that the unexercised option was an interest in realty, First National did not have a perfected security interest in the same since no filing was made with the County Recorder as required by *Ill. Rev.Stat.*1987, Ch. 30, pars. 27, 29.

It must also be noted that the lease agreement provided in part:

> Section 1403. Lessee shall not allow or permit any transfer of this Lease, or any interest hereunder, by operation of law, or convey, mortgage, pledge or encumber this lease or any interest hereunder.

1. *In re Bristol Associates, Inc.*, 505 F.2d 1056 (3rd Cir.1974).

The Option provision did specifically state that the lessee could assign the Option to Aurora National Bank Trust # 19060. But it did not state that it could be mortgaged or pledged to any other parties. This suggests that the lessee-Debtor had no authority to pledge or mortgage the Option to the Bank. But we need not decide that point. The Option was not recorded properly as a real estate interest and so no security interest was perfected by the Bank.

## 2. The Option Was Exercised and Was a Contract to Purchase Real Estate.

 In order to facilitate any appeal that may be taken, this Court will address the remaining arguments presented. Schechter alternatively contends that at the time of the sale, the Option was a contract to purchase real estate. On November 9, 1987, before the filing of this Adversary proceeding, Valley Liquors gave notice of exercise of the Option. Schechter argues that upon exercise of an option to purchase real estate, it becomes a contract to purchase real estate, binding on both the purchaser and the seller.

This Court previously found that the Option was exercised some time before June, 1988. The date of exercising the Option had become an issue on Valley Liquor's motion to assume the unexpired lease on the subject property. In approving that motion, this Court then found based on evidence heard that,

> The evidence clearly shows that the lessor gave that notice of intention to exercise option and purchase and gave it at least 6 months before the end of the term. In fact, the debtor gave it a lot longer than 6 months before the end of the term.... I, therefore, find from the evidence that the debtor has properly exercised the option and has the right under that option to close the purchase until the end of the term. That term does not expire until 120 months after December 1, 1987 [sic 1978], and I do believe that ends at the end of November 1988, ..."

*Transcript of hearing June 20, 1988,* at p. 4–5.

"First National here admits that on November 9, 1987, Valley Liquors provided the lessor with written notice of its intention to exercise the Option. That notice was what this Court previously found to amount to an exercise of the Option. However, the Bank argues that prior to June 17, 1988, the date when Valley Liquors presented to the Court its application to Purchase and Sell Real Estate Free and Clear of Liens and Other Interests, Valley had taken no action to exercise the Option other than giving notice of intention to do so by notice on November 9, 1987. On July 29, 1988, this Court entered an order rejecting the sale to Daniel Dolan and authorizing the sale of the Option to V.I.P. The Bank contends that the Order "clearly authorizes the sale of the unexercised Option described in Section 2701 of the Lease." Memorandum of Plaintiff in Opposition, at 5. The Bank further argues that the Order authorizing the sale of the Option to V.I.P. would have been inconsistent with a prior exercise of the Option by Valley Liquors. However, this Court's fact finding of June 20th made clear that what Debtor had to sell was its rights and obligations under the exercised Option. Sale of those rights and obligations is what the order of July 29, 1988, approved.

Under Illinois law, Mr. Schechter is correct in arguing that an exercised option is a contract to purchase real estate. In *Welsh v. Jakstas,* 401 Ill. 288, 82 N.E.2d 53, 59 (1948), the Illinois Supreme Court found, "[t]he option, when accepted, resulted in a present contract for the sale of real estate. The provisions of the option agreement then constituted the contract of sale...." Similarly in *Cities Service Oil Co. v. Viering,* 404 Ill. 538, 89 N.E.2d 392, 402 (1949), the Illinois Supreme Court held that when the plaintiff exercised its option to purchase by notice served on the defendant, "a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the premises in the plaintiff." In *Bonde v. Weber,* 6 Ill.2d 365, 128 N.E.2d 883, 888 (1955), the Illinois Supreme Court further observed that an option contract,

is an executed unilateral contract, the provisions of the same may become bilateral and executory at any time during the life of the contract by acceptance of the option as prescribed. In such contracts two elements exist, an offer to sell which does not become a contract until accepted, and a contract to leave the offer open for a specified time." (citations omitted)

The rule of *Welsh v. Jakstas* was recently reaffirmed in *Hanson v. Duffy*, 106 Ill. App.3d 727, 62 Ill.Dec. 401, 405, 435 N.E.2d 1373, 1377 (2nd Dist.1982) where the court stated, "An option, when accepted and exercised according to its terms, becomes a present contract for the sale of the premises." The court went on to hold that the exercise of such option terminates the lessor and lessee relationship, and causes those parties to enter into a relationship of vendor and vendee. In equity, the land is then regarded as the property of the vendee subject to the rights of the vendor under the contract, and the lessor is not entitled to rent thereafter unless the lease expressly so provides. The *Hanson* court found the option was exercised when the lessee/vendee properly notified the lessor/vendor that he would exercise the option to purchase.

■ First National contends that the mere giving of notice of intention to exercise Option was not sufficient to exercise that Option. However, First National does not show what further action was necessary. Unless the Option itself specifies further action to exercise the Option, such as tender of consideration or execution of a contract, the Option can be exercised by merely giving notice of intention. In this case, the Option stated the sale price and date by which the real estate sale must take place (by the end of November, 1988, about four months after sale by Debtor of its Option rights was approved.) Exercise of the Option triggered obligations to buy and sell at that price by that date.

In *Keene Corp. v. Chapple*, 716 F.2d 475 (7th Cir.1983), an issue arose as to whether notification given by one party was sufficient to exercise an option. The court held that the option had been effectively exercised, relying on the following rule:

If no specific mode of acceptance is specifically fixed in the offer, the acceptance need not be in any particular form nor evidenced by express words. *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill.App.2d 2, 176 N.E.2d 1, 5 (1961).

*Keene*, 716 F.2d at 478. *See also H.M.R., Inc. v. Boeckenhauer*, 24 Ill.2d 65, 179 N.E.2d 613 (1962), ("Even though an option may by its terms be exercised without the instant tender of consideration, such tender must occur within a reasonable time thereafter unless otherwise excused."); *Farley v. Roosevelt Memorial Hosp.*, 67 Ill.App.3d 700, 24 Ill.Dec. 194, 384 N.E.2d 1352 (1st Dist.1978) ("The option agreement required neither that the contract be executed as a condition precedent to the acceptance of the option nor that it was to be executed concurrently with the exercise of the option.... in this case we do not view the execution of the contract as an ingredient of the exercise of the option.")

■ In light of the foregoing precedent, once the Option involved here was exercised, it ripened into a contract for Debtor to purchase real estate. As such it was clearly not covered by the Uniform Commercial Code at that time. Ill.Rev.Stat. 1987, Ch. 26, § 9–104(j). Therefore, even assuming *arguendo* that the original Option was not a realty interest, any security interest in the exercised Option could not be perfected by filing a financing statement with the Illinois Secretary of State. Interests in real estate must be properly perfected by filing with the appropriate County Recorder. *Ill.Rev.Stat.*1987, Ch. 30, pars. 27, 29. Plaintiff does not allege that it ever did so.

3. *Even if Plaintiff's U.C.C. filing perfected its interest, Exercise of the Option Divested it of Such Interest.*

The issue next presented on this record is this: Assuming *arguendo* that the unexercised Option were personal property, did the exercise of Option subsequent to date of asserted U.C.C. perfection by First National of its lien on "General Intangibles"

divest it of such asserted security interest? The question arises here because First National perfected its lien on "General Intangibles" on March 19, 1986, while the Option was exercised on November 9, 1989.

First National relies on *Argonne Construction Co. v. Norton,* 29 B.R. 731 (N.D.Ill.1983). The issue in *Argonne* was whether parties who signed a contract to buy a condominium were purchasers or owners at the time a contractor's mechanic lien arose. The following discussion of equitable conversion is pertinent here:

> Illinois law adopts the principle that under certain circumstances, a contract purchaser takes equitable title to the land. As discussed in *Shay v. Penrose,* 25 Ill.2d 447, 185 N.E.2d 218 (1962)
>
>> Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, *as between the parties and those claiming through them,* when the owner of land enters into a valid and *enforceable* contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the eligible owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering the contract. It stems from the basic principle that equity regards as done that which ought to be done.
>
> *Id.,* at 449, 185 N.E.2d at 219–220, emphasis supplied.

*Argonne,* 29 B.R. at 735. Equitable conversion as discussed in *Argonne* does not apply in the instant case, and First National's reliance on such principle is misplaced. The doctrine of equitable conversion evolved in order to carry out the intention of the parties to a contract. *See, First National Bank of Highland Park v. Boston Ins. Co.,* 17 Ill.2d 147, 160 N.E.2d 802 (1959), 12A *Illinois Law and Practice,* Conv. § 7 (1983). Therefore, the court in *First National Bank of Highland* found that the doctrine acts upon the rights of the parties to the contract and those who claim under them, but should have no effect upon the rights of others.

In *First National Bank of Highland,* the bank held title to certain property as trustee under a land trust. Such property was insured against fire by four insurance companies with policies aggregating $46,750. Each policy limited indemnity to the insured's interest in the property. The insured entered into a contract to sell the property to a third party for $19,000, $3,000 of which was then paid. Prior to closing of the sale, the building was totally destroyed by fire. The insurers conceded that at the time of fire, the building's value exceeded the total insurance. However, the insurers argued that a contract for insurance is a personal contract of indemnity and that in no event is an insured entitled to be paid more than his actual pecuniary loss. They argued that the insurable interest of a vendor in an executory contract for the sale of realty cannot exceed the balance of the unpaid purchase price. The court found that the doctrine of equitable conversion did not apply to these facts, such doctrine having evolved in order to carry out the intention of the parties to the contract. That doctrine should have no effect on the rights of others not party to the contract.

If the doctrine of equitable conversion applies in the instant case, it is applicable to the relationship between the parties to the option contract, Debtor and Aurora National Bank. Once the Option was exercised the property was then regarded as that of the Debtor's subject to Aurora's rights under the contract. Debtor then sold its rights under the exercised Option to V.I.P. The doctrine of equitable conversion does not affect First National's rights.

The court in *In re Arlett,* 22 B.R. 732 (Bankr.E.D.Ca.1982), addressed the issue presented here, applying the law of California. In *Arlett,* the plaintiff held a U.C.C. perfected security interest in a solar water heater. The water heater was later attached physically to the residence of the Debtor. After determining that the water heater had become a fixture to that property, the court went on to decide whether plaintiff had an enforceable security inter-

est in that fixture. The court held that it did not:

> On the date that the contract was consummated, the Assignor had an enforceable security interest in the solar water heater pursuant to the "SECURITY" provision of the contract. However, after that time the solar water heater became a fixture on the residence of the Debtors. *This event transformed the character of the solar water heater from personal property to real property. The transformation of the character of the solar water heater has abrogated the Plaintiff's security interest in the solar water heater.* To have an enforceable security interest in real property, a creditor must comply with the applicable provisions of real property law in the state in which the real property is located.... Since the Plaintiff has not complied with these laws, it does not have an enforceable security interest in the Debtors' real property. (emphasis added)

*Arlett,* 22 B.R. at 735.

 Although no court applying Illinois law has expressly made the same finding as the *Arlett* court, the Illinois Uniform Commercial Code (U.C.C.) by analogy shows that the *Arlett* holding would be followed under Illinois law. Section 9–313 of the Illinois U.C.C. provides that when goods become so related to particular real estate that an interest in them arises under real estate law, a different form of filing is required:

> (1) In this section and in the provisions of Part 4 of this Article referring to fixture filing, unless the context otherwise requires
>
> (a) goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law
>
> (b) a "fixture filing" is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of subsection (5) of Section 9–402
>
> \* \* \* \* \* \*

> (4) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where
>
> \* \* \* \* \* \*
>
> (b) the security interest is perfected by a fixture filing before the interest of the encumbrancer or owner is of record, the security interest has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner, and the debtor has an interest of record in the real estate or is in possession of the real estate; ....
>
> \* \* \* \* \* \*

The official comment to § 9–313 provides:

> Section 9–313 deals with the problem that certain goods which are the subject of chattel financing become so affixed or otherwise so related to real estate that they become part of the real estate, and that chattel interests would be subordinate to real estate interests except as protected by the priorities regulated by the section.

Section 9–313 makes clear that an otherwise perfected security interest in personalty is abrogated when the property secured under that security interest changes into realty. If that were not so, § 9–313 would have no statutory purpose. Therefore, § 9–313 supports application of the *Arlett* rationale to Illinois law. That supports the holding here that a security interest in personal property is abrogated once that property is transformed into a real estate interest. In that situation, the secured party loses its security interest unless it can and does record against the real property by appropriate recording. To guard against loss of its security interest the party can record its interest with the County Recorder. Therefore, to be safe First National could have double recorded, both with the Recorder of Deeds and the Secretary of State.

In *Rock Island Bank v. Anderson,* 178 Ill.App.3d 1068, 128 Ill.Dec. 180, 534 N.E.2d 200 (3rd Dist.1989), the court determined that a second filing was not necessary when a mobile home was placed on ground leased by the defendants. However, the court did not find that the mobile home became a fixture of the property.

The *Rock Island* trial court, relying on U.C.C. § 9–313(7) [*Ill.Rev.Stat.*1987, Ch. 26, par. 9–313(7)] found that a second filing was necessary once the mobile home became attached to the real estate. The appellate court disagreed and found:

An analysis of the statutory language relied on by the trial judge causes us to conclude that those statutory directives pertain only to persons who seek to obtain a security interest in a chattel which has not as yet been perfected. In the case at hand, however, the security interest of First Federal had been perfected some three years earlier.

*Rock Island*, 128 Ill.Dec. at 181, 534 N.E.2d at 201. The above language did not indicate any finding that the mobile home became a real estate fixture at any point. On the contrary, the opinion indicated the court's view that a mobile home remained a chattel even when placed on land. [Indeed the Seventh Circuit in *Matter of Keidel*, 613 F.2d 172, 173 (7th Cir.1980), had earlier held that a mobile home was a motor vehicle.]

The dissent in *Rock Island*, found that the majority decision was in direct conflict with the U.C.C. as adopted in Illinois:

... Citing only to the authority of the Blacks Law Dictionary (3rd ed. 1933) and in direct defiance of section 9–313 of Code, the majority has determined that First Federal's 1982 perfection of its security interest in the mobile home as a motor vehicle gave it priority over all subsequent interests for all time.

The Code does not define "perfection" as such, but does require fixture filing for goods which are to become a fixture if a secured party is to maintain priority over conflicting interests of an encumbrancer or owner of real estate. (*Ill.Rev. Stat.*1987, ch. 26, pars. 9–302(1)(d), and 9–313(4) and (7).) The Code clearly contemplates changes in collateral and provides a simple solution for perfecting a security interest in a mobile home that the secured party contemplates will become affixed to land. The wary lender is advised to prefile its financing statement or mortgage in the county where the home is to become affixed and this "fixture filing" will protect the secured party's priority status as against subsequent encumbrances of the real estate. *Ill. Rev.Stat.*1987, ch. 26, pars. 9–313 and 9–402.

*Rock Island*, 128 Ill.Dec. at 183, 534 N.E.2d at 203.

No other case law has been found to discuss when a second filing is required under § 9–313 of the Illinois U.C.C.[2]

As held earlier, once the Option was exercised it became an interest in real estate even assuming *arguendo* that it was not so earlier. In light of the foregoing reasoning, even if First National had properly recorded a U.C.C. security interest in the Option, such interest was abrogated once the Option was exercised.

**4. *First National's Complaint Should be Dismissed.***

■ Since First National has no valid or perfected security interest in the Option Proceeds, it lacks standing to bring a complaint seeking a determination of the rights of others in the Option Proceeds. The Trustee, however, argues that the Adversary Complaint should not be dismissed:

Given the fact that the Trustee will seek to avoid the interests or liens of all the parties in this proceeding, and that such issues must be resolved in the context of an adversary case, it is not an efficient use of this Court's resources to dismiss this proceeding prior to the Trustee's filing her claims for avoidance of liens.

Wherefore, while the Trustee urges this Court to enter judgment against the Bank on its claim of priority, the Trustee will shortly request leave to file cross-claims and a counterclaim to avoid the remaining liens asserted in the option

2. In *First Wisconsin Nat. Bank v. Federal Land Bank*, 849 F.2d 284, 287 (7th Cir.1988), the court found that when personalty becomes a fixture, it becomes part of the realty and passes by transfer of title to the land unless specifically reserved in writing. Therefore, the opinion determined that the bank holding a mortgage on the debtor's real property had an interest in fixtures attached thereto.

proceeds and thus objects to dismissal of this case.

Trustee's Supplement to Memorandum of Schechter, at 5.

That argument was filed on February 17, 1989. Since then, she has not filed the promised pleadings. The Trustee's argument is without merit. Should she seek relief she now must bring her own complaint and ought do so with reasonable expedition. In the meantime, the First National is entitled to an appealable final judgment. Defendant will present a proposed judgment order finally dismissing this case on August 21, 1989 at 10:30 A.M. without further notice.