In re Fenton **BEABOUT**, aka/dba farming, and Linda M. Beabout, Debtor(s).

Donald **HOAGLAND**, Trustee, Plaintiff,

v.

Fenton **BEABOUT**, Linda M. Beabout; The Bank of Casey; The Farm Credit Bank of St. Louis, successor to the Federal Land Bank of St. Louis; and United States of America, acting through Farmers Home Administration, Defendants.

Bankruptcy No. 89–40534.
Adv. No. 89–0151.

United States Bankruptcy Court,
S.D. Illinois.

Feb. 22, 1990.

Mark Shaner, Robinson, Ill., for Trustee.

Steven Garst, Paris, Ill., for debtors.

Ron Fuhr, Effingham, Ill., for Bank of Casey.

Gerald M. Burke, Asst. U.S. Atty., for Farmers Home Adm.

Wm. Sunderman, Charleston, Ill., for Farm Credit Bank.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Following sale of the debtors' real estate, the trustee filed a motion to marshall liens in which he alleged that the Bank of Casey was not entitled to any proceeds from the sale of a one-acre tract and mobile home that had become attached to the real estate. The trustee proposed to pay the proceeds from the sale of this tract to the Farm Credit Bank of St. Louis, which held a mortgage on the real estate.

The Bank of Casey opposes the trustee's motion, alleging that it has a security interest in the mobile home that was perfected by notation on the vehicle's certificate of title prior to the time the mobile home became attached to the real estate. The Bank of Casey contends that its interest is

superior to that of the Farm Credit Bank as mortgagee and requests the Court to determine the priority of the parties as to the value of the mobile home.

The facts are undisputed. In 1979, the Farm Credit Bank obtained a mortgage on the real estate in question. In 1983, the Bank of Casey financed the purchase of a mobile home by the debtors and perfected its lien on the mobile home by having the lien recorded on a certificate of title issued by the Illinois Secretary of State. The debtors placed the mobile home on their property and, subsequently, erected a concrete foundation, put in sidewalks, built a deck, and attached a garage to the mobile home.

At hearing, both sides agreed that the mobile home had become permanently attached to the real estate so as to become a "fixture." Counsel for the Bank of Casey concurred with the representation of the trustee's counsel that, "at this point, there is no way to separate the mobile home from the real estate; it's all one ... [the mobile home] is simply real estate now." Counsel further asserted that the mobile home could not be valued separately from the land. The trustee's motion stated the value of Tract 3, on which the mobile home was located, as $18,000, and neither the trustee nor the Bank of Casey has set forth any basis for valuing the mobile home apart from the land.

The Bank of Casey argues that, since it properly perfected its security interest in the mobile home at the time the mobile home was personal property,[1] its security interest remained effective once the mobile home became attached to the real estate as a fixture. The trustee maintains, however, that once the mobile home ceased to be personal property and became a fixture, the provisions governing perfection of security interests in fixtures became applicable and the Bank of Casey was required to make a fixture filing under section 9–313 of the Uniform Commercial Code (Code) (Ill.Rev.Stat., ch. 26, par. 9–313) in order to attain priority over the Farm Credit Bank as mortgagee of the real estate.

Section 9–313 provides in relevant part:

(4) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where

(a) the security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, *the security interest is perfected by a fixture filing before the goods become fixtures or within 10 days thereafter,* and the debtor has an interest of record in the real estate or is in possession of the real estate[.]

. . . .

(7) In cases not within the preceding subsections, a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer or owner of the related real estate who is not the debtor.

Ill.Rev.Stat., ch. 26, pars. 9–313(4)(a), 9–313(7) (emphasis added). A "fixture filing" is defined under section 9–313 as

the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of subsection 5 of Section 9–402[.]

Ill.Rev.Stat., ch. 26, par. 9–313(1)(b).

The Court notes preliminarily that the parties agree that the debtors' mobile home has become so attached to the real estate as to constitute a fixture, and there is no question of fact in this regard. Under section 9–313(1)(a), goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law. Ill.Rev. Stat., ch. 26, par. 9–313(1)(a). As a fixture, the mobile home, which would otherwise be personal property, has taken on the nature of real property and is subject to encum-

---

1. Under Illinois law, perfection of a security interest in a motor vehicle, including a motor home, is accomplished by recording a lien on the certificate of title in accordance with the provisions of the Illinois Vehicle Code. Ill.Rev. Stat., ch. 26, par. 9–302(3)(b) and (4); Ill.Rev. Stat., ch. 95 1/2, par. 3–202(b).

brances on the real estate to which it is affixed. *See First Wisconsin National Bank v. Federal Land Bank,* 849 F.2d 284 (7th Cir.1988) (applying Wisconsin law); 19 Ill.L. & Prac. *Fixtures,* section 8, at 474 (1956). Indeed, section 9–313 expressly provides that the Code "does not prevent creation of an encumbrance upon fixtures pursuant to real estate law." Ill.Rev.Stat., ch. 26, par. 9–313(3). *See also George v. Commercial Credit Corp.,* 440 F.2d 551 (7th Cir.1971).

■ By its terms, section 9–313(4)(a) applies to the present case involving a conflict between the Bank of Casey's purchase money security interest in personalty that has become a fixture and the Farm Credit Bank's prior mortgage on the real estate to which the fixture is attached. Under section 9–313(4)(a), the Bank of Casey was required to make a fixture filing of its security interest in the mobile home in order to prevail over the conflicting interest of the Farm Credit Bank as mortgagee. The Bank of Casey, as holder of a purchase money security interest, could have made such a filing in the real estate records before the mobile home became a fixture or within 10 days thereafter. While the Bank of Casey properly perfected its security interest in the mobile home as personal property, section 9–313 indicates that an otherwise perfected security interest in personalty is ineffective against real estate encumbrances once the secured property changes into realty by becoming a fixture. *See In re Valley Liquors, Inc.,* 103 B.R. 961 (Bankr.N.D.Ill.1989).

The Bank of Casey argues that perfection of its security interest in the mobile home as personal property was sufficient to give it priority over the Farm Credit Bank's mortgage even after the mobile home became attached to the real estate as a fixture. The Bank cites *Rock Island Bank v. Anderson,* 178 Ill.App.3d 1068, 128 Ill.Dec. 180, 534 N.E.2d 200 (1989), as authority for its position that it was not necessary to make a second filing in the real estate records to maintain perfection of its security interest.

*Rock Island Bank v. Anderson* appears to be the only decision of an Illinois state court dealing with the application of section 9–313 in a factual situation similar to the instant case. In *Rock Island,* First Federal Savings and Loan sold a mobile home to the Andersons and perfected its purchase money security interest by filing with the Secretary of State and obtaining a lien on the vehicle's certificate of title. The mobile home was placed on leased ground, where the Andersons set it on a cinder block foundation, added a room, and built an attached garage. Subsequently, the Andersons executed a trust deed along with an assignment of the leasehold interest where the mobile home was situated to secure a loan from the Rock Island Bank. Upon default, the Bank sued to foreclose its trust deed. The trial court found that the Bank's lien in the mobile home was superior to that of First Federal because First Federal had failed to make a fixture filing as required under section 9–313 once the mobile home became attached to the real estate.

On appeal, a divided court determined that a second filing was not necessary to perfect First Federal's interest in the mobile home after it was attached to the real estate. The majority stated that the statute relied on by the trial court (section 9–313) "pertains only to persons who seek to obtain a security interest in a chattel which has not as yet been perfected." *Rock Island,* 128 Ill.Dec. at 181, 534 N.E.2d at 201. The court concluded that once First Federal had perfected its interest according to the statute applicable to the mobile home as personal property, its security interest was "perfect" as defined in Black's law dictionary, or "finished, complete, and enforceable," so that no further filing was required. *Id.,* 128 Ill.Dec. at 182, 534 N.E.2d at 202.

The dissenting justice in *Rock Island* pointed out that the majority position was in direct conflict with section 9–313 of the Code as adopted in Illinois. The dissent observed that while the Code does not define "perfection" as such, it does require fixture filing for goods which are to become fixtures if the secured party is to

maintain priority over conflicting interests of an encumbrancer or owner of real estate. The dissent continued:

> The Code clearly contemplates changes in collateral and provides a simple solution for perfecting a security interest in a mobile home that the secured party contemplates will become affixed to land. The wary lender is advised to prefile its financing statement or mortgage in the county where the home is to become affixed and this "fixture filing" will protect the secured party's priority status as against subsequent encumbrancers of the real estate. [Citation.]

*Rock Island,* 128 Ill.Dec. at 183, 534 N.E.2d at 203.

 The Court agrees with the dissent in *Rock Island* that the majority decision contravenes the plain language of section 9–313, which requires that a security interest in fixtures be perfected by a fixture filing in the real estate records in order to obtain priority over conflicting real estate interests. While the majority dismisses section 9–313 as having no application when a security interest has been perfected in personal property prior to its becoming a fixture, this is precisely the situation that section 9–313 addresses. Section 9–313 makes clear that a perfected security interest in personal property is no longer effective once the property is changed into realty. If this were not so, section 9–313 would have no statutory purpose. Under section 9–313, priority of a personal property security interest is lost unless the secured party records its interest against the real estate by making a fixture filing. Thus, in order to insure its priority as to goods that are to become fixtures, the prudent lender will make a double filing under both the provisions applicable to personal property and the provisions governing fixtures. *See* Illinois Code Comment, Ill.Ann. Stat., ch. 26, par. 9–313, at 236 (Smith-Hurd 1974); *In re Valley Liquors.*

The Bank of Casey makes a further argument based on policy, asserting that since the mobile home was personalty at the time the Bank perfected its interest, it should not be required to "keep watch" over the collateral in order to make a fixture filing once the mobile home became attached to the real estate. The Bank asserts that it is unreasonable to require a lender to continuously monitor the whereabouts of a mobile home in which it has a purchase money security interest and that the burden should instead be on the real estate lender to make inquiry about a structure located on the land. *See Rock Island Bank v. Anderson; Beneficial Finance Co. v. Schroeder,* 12 Kan.App.2d 150, 737 P.2d 52 (1987).

While the Bank's argument is compelling, the explanatory comments to section 9–313 demonstrate that its drafters considered such objections and that the fixture filing requirements of section 9–313 reflect a legislative policy decision that interests affecting real estate be recorded in the real estate records to afford notice to parties dealing with the real estate. Under a previous version of section 9–313 (1962 Code), purchase money secured parties were accorded priority over persons who claimed an interest in the real estate if their security interest attached prior to the time the goods became affixed to the real estate. Ill.Rev.Stat., ch. 26, par. 9–313(2) (1971); *see* Illinois Code Comment, *supra,* at 235. The purchase money lender thus had priority over real estate interests even though no financing statement was ever filed.

In 1972, section 9–313 was revised to require a purchase money secured party to make a fixture filing before or within the 10–day grace period to attain priority over previously recorded real estate interests. This change was made to afford notice to real estate owners and encumbrancers of purchase money secured interests in personalty that had become attached to the real estate as fixtures. The authors of the Illinois Code Comment to section 9–313 expressed the purpose of this revision as follows:

> Under [the revised] paragraph a prior encumbrancer or owner can, by a search of the real estate records, discover any purchase money secured party with priority over his interest. If his search discloses no such secured party, he may

rely upon fixtures added after his interest arose, as additional security either to make further advances under his mortgage or to refrain from foreclosure on the strength of the existence of such additional security.

Illinois Code Comment, *supra*, at 236.[2]

 Despite the seeming inequity of allowing the real estate lender here to prevail over the Bank of Casey's purchase money security interest in the mobile home, the statute is clear that the Bank was required to perfect its interest by notice in the real estate records or be subordinated to prior encumbrances on the land. The Court cannot, under the guise of equity, grant relief in conflict with statutory directives. If the statute is unreasonable as applied to the financing of mobile homes because of their "mobile" nature and the difficulty of making a fixture filing in the proper county, the subject should more appropriately be dealt with by legislative action.

As set out previously, the parties here presented no factual issue as to whether the mobile home in question had become a "fixture" under Illinois law. The Bank of Casey, while conceding that the mobile home had become a fixture, argued that the provisions governing perfection of security interests in fixtures should not apply. As stated, the Court finds that the fixture filing provisions of section 9–313 are applicable and that, by failing to perfect its interest in the mobile home by a fixture filing, the Bank of Casey's purchase money security interest has become subordinated to the conflicting interest of the Farm Credit Bank under section 9–313(7). Ill.Rev.Stat., ch. 26, par. 9–313(7).

The Court, accordingly, OVERRULES the Bank of Casey's objection and orders that the proceeds from the sale of Tract 3 be paid to the Farm Credit Bank as proposed in the trustee's motion to marshall liens.

IT IS SO ORDERED.

---

2. The 1972 amendment to section 9–313 was enacted at the urging of members of the real estate bar which found the 1962 version to be extreme. They apparently had not fully appreciated the impact of the fixture provisions on real estate financing and real estate titles because of the commonly-held assumption that Article 9 was concerned only with chattel security matters. The 1972 revision was designed to bring section 9–313 more in line with pre-Code practice in states where the word "fixture" was understood to mean that a former chattel had become real estate for all purposes and that any chattel rights therein were lost. *See* R. Anderson, Uniform Commercial Code, section 9–313:2, at 316 (3d ed. 1985) (Official explanation of the 1972 Amendment).